(36 South. 492.)

No. 14,994.

STATE v. CAFIERO.*

(Nov. 30, 1903.)

CRIMINAL LAW—JURY LIST—SERVICE ON DEFENDANT—NEW TRIAL.

1. Where "Gustave Cire, Jr.," was drawn to serve as a juror, and was duly summoned and attended the session of the court, the circumstance that the descriptive term "Jr." was omitted in the copy of the jury list served on the accused is inconsequential, and does not affect the

*Rehearing denied April 25, 1904.

legality of the service, no prejudice being shown. State v. Rodrigues, 13 South. 802, 45 La. Ann. 1043; State v. Turner, 25 La. Ann. 574; State v. Ballerio, 11 La. Ann. 82.

2. Evidence was admissible to prove that the juror drawn and summoned was the only person of that name in his ward, and that his father died more than a year before the drawing of the jury. Stewart v. State (Ala.) 34 South. 818.

3. On the trial of·a motion for a new trial, counter affidavits or evidence are admissible. 1 Bishop's New Cr. Proc. p. 780.

(Syllabus by the Court.)

. Appeal from Twenty-Seventh Judicial District Court, Parish of Ascension; Paul Lèche, Judge.

Leopold Cafiero was convicted of murder, and appeals. Affirmed.

Edward N. Pugh, for appellant. Walter Guion, Atty. Gen., and Gustavus Adolph Gondran, Dist. Atty. (Lewis Guion, of counsel), for the State.

LAND, J. The defendant was indicted for the murder of Louisa Le Blanc, was tried, found guilty as charged, and sentenced to be hanged.

During the trial of the case a number of bills of exception were reserved. It is necessary to consider only those bills which were discussed by counsel for defendant in his brief and argument.

The first bill of exception was taken to the action of the trial judge in overruling defendant's objections to proceeding to trial on the alleged ground that a correct copy of the jury list for the week had not been served on him as required by section 992 of the Revised Statutes of 1870.

It is alleged in the bill that one Gustave Cire, Jr., was drawn as a juror, and that on the copy of the jury list served on defendant the name of Gustave Cire was substituted. The bill recites that, on the face of the procès verbal of the drawing and of the copy served, the two names represent two distinct persons; and it is therefore contended that the copy served was not a true

copy of the list drawn, as required by the statute.

The trial judge permitted the state to prove that when the jury list was supplemented in July, 1902, Gustave Cire, the father, and Gustave Cire, the son, were both living; that the father died in September, 1902, at the age of 74 years; and that since said date the son has been the only person of that name residing in the ward. This evidence was objected to by defendant, and a bill reserved.

On July 20, 1903, Gustave Cire, Jr., was drawn on the venire to serve for the August term of court. He was duly summoned, attended the session of the court, and was peremptorily challenged by the defendant.

Counsel for defendant argues that the only evidence admissible on the trial of his objection was the official list of jurors as drawn, and the purported copy of said list served on defendant. The bill assumes that Gustave Cire, Jr., was legally drawn as a juror. This being so, the presumption is that the word "Jr." was omitted in making the copy through clerical error. It cannot be presumed that the clerk of the court intentionally substituted the name of a different person, not drawn as a juror. The latter presumption is not admissible, because it is tantamount to a charge that a sworn officer of the law falsified the official records. It cannot be deduced from a comparison of the original list with the copy served that Gustave Cire, Jr., and Gustave Cire were distinct persons. The question of the existence of two persons of the same name and surname, residing in the same place; or of the identity of a person styled "Gustave Cire, Jr.," in one document, and "Gustave Cire" in another, is a question of fact, rather than of law.

The evidence was properly admitted. Stewart v. State (Ala.) 34 South. 818. On the evidence, it is clear that there was but one Cire in the ward when Gustave Cire, Jr., was drawn as a juror, and when the copy of the list was made and served on the defendant. The father died in September, 1902, and in July, 1903, when the son was drawn as a juror, the descriptive word "Jr." was unmeaning and unnecessary. Defendant was aware or could have readily informed himself of the identity of the juror, who was in attendance on court; and there is nothing to show that defendant believed, or had any reason to believe, that the dead Cire was the person indicated by the name of "Gustave Cire."

In State v. Rodrigues et al., 45 La. Ann. 1043, 13 South. 802, it was held that the name of the juror Lavaniste Dupont having been written "Aniste Dupont" on the copy of the venire which was served on the accused is inconsequential, and could not affect the legality of the service, because the name was correctly written on the original venire, and that the omission of the first syllable of the name, to wit, "Lav," was the result of accident."

In an analogous case this court said: "To make a perfect list would be impracticable, and to construe the law so as to require it would operate an indefinite suspension of the trial by jury." In another case, Darden was drawn on the jury, and in the copy of the list served on the accused the name appeared as "Dauden." The court ruled that no prejudicial error was shown. State v. Turner, 25 La. Ann. 573.

In State v. Jackson, 12 La. Ann. 679, and State v. Murray, 47 La. Ann. 914, 17 South. 424, cited by defendant's counsel, the objections were made during the trial, and came too late.

The objection of defendant against proceeding to trial was properly overruled.

Defendant moved for a new trial on three distinct grounds:

The first, that the verdict is contrary to the law and the evidence, needs no consideration. The second has been discussed and passed upon.

The third is as to the competency of M. N. Landry, a tales juror who served on the panel. No bill of exception was reserved to the acceptance of said juror, but the question was raised for the first time in the motion for a new trial.

The motion recites as follows:

"That this juror, Landry, was accepted by the state, and tendered to the accused. That on his voir dire said juror Landry testified that he had heard of the case, had formed an opinion, but it would yield to evidence. In answer to the direct question put to him by the counsel of the accused, 'Have you any prejudice against Italians?' (the accused being an Italian), to which question said juror answered, 'No;' that he had no prejudice against Italians, and his mind was in such a condition as to give defendant a fair trial.

"Now, your petitioner avers and alleges that about an hour ago, say 2:30 p. m., this 29th August, he discovered and learned that on yesterday, August 28, 1903, at the courthouse of this parish, where a large concourse of people were assembled, during the trial of this case, and just prior to the calling of said M. N. Landry as a talesman in this case, said Landry, in a conversation with Oscar Dugas, of the parish of Assumption, and the clerk of the court thereof, openly and in a decided and emphatic manner expressed his prejudices and passions against all Italians; remarking and saying that in the recent case of the state of Louisiana v. Gouvernale and Palermo, two Italians charged with horse stealing, the trial judge had granted a new trial, and that all of them ought to be hung (said new trial having been granted on the 27th August, 1903); said juror, from his manner and expressions, openly showing and stating his hatred to Italians and to the Italian race, and further expressing his utter contempt of them, and his ardent desire to see them hang."

The motion further recites:

"Mover alleges that, in spite of his denial, said Landry had not only formed, but openly expressed, an opinion against your accused, and when he went on said jury his mind was unalterably made up to convict your accused, and to this end he used all of his influence on the other members of the jury, who otherwise would have rendered a different verdict."

The above extracts contain the essential allegations of the motion for a new trial, which was sworn to by the accused and his counsel.

On the trial of the motion the accused offered in evidence the affidavits of Oscar Dugas and Edward N. Pugh.

The affidavit of Dugas is as follows, viz.:

"That he is the clerk of the Twenty-Seventh Judicial District court, in and for the parish of Assumption. That on Friday, August 29, 1903, he was in the town of Donaldsonville on business, and was present at the courthouse during the trial of the case of the State of Louisiana v. Leopold Cafiero. That during the recess hour for dinner he met M. N. Landry on the side of the courthouse, where he was sitting. He asked me what I was doing here. I answered that I came on business, and also to hear the Cafiero case. He then asked me about the man who was charged with raping a child. I answered that the man was in jail. He then told me that he should be hanged. I then said that it looked to me so improbable that I would like to hear some evidence before hanging him. He then told me these two horse thieves also ought to be hanged, but, instead, had been convicted, and had been granted a new trial. I then told him that I thought he was a bad man to-day; that he reminded me of some one in our parish who wanted to hang people, and then try their case. He then told me that he supposed that, if Cafiero was convicted, he would be granted a new trial. He told me then that the jurors were not selected in Donaldsonville, but were from New River, Port Barrow, and Smoke Bend. He seemed to be

very much exercised and wrought up at the idea of the judge granting the horse thieves a new trial.

"After that I went into the courthouse, and was present when M. N. Landry was called up as a talesman. As soon as M. N. Landry came up, I nudged Lawrence H. Pugh, who was sitting by my side, and who also had been present when the above conversation was held between myself and M. N. Landry, and I said, 'Here is our man.' Lawrence answered, 'I hope that Brother Ned does not take him.' Then he was taken as a juror. I then exclaimed: 'Poor Cafiero! I pity you.' The impression created upon my mind by the conversation with this juror was that he was very prejudiced and wrought up. His manner of talking was very emphatic, and my expression that he was a bad man was brought by his extreme earnestness of speech and manner in his conversation with me.

"I was phoned to on Saturday at 2:30 o'clock by Mr. E. N. Pugh, who asked me whether I had such a conversation. I said yes, and the first time that I have seen counsel, E. N. Pugh, was this morning."

Mr. Pugh, in his affidavit, testified substantially that the facts stated in the motion for a new trial came to his knowledge after the trial; that, at the time Landry was called as a tales juror, 11 jurors had been sworn, and the accused had exhausted all his peremptory challenges; "that Landry on this examination answered that he had formed an opinion, that it would take evidence to change it, and that he had no bias or prejudice, and was impartial between the state and the accused"; that affiant, on the voir dire, asked said juror if he was prejudiced against Italians, to which he answered, "No"; "that said Landry is an exceedingly prejudiced man, and is exceedingly obstinate in maintaining his opinions, and, from his personal knowledge of the characteristics of said juror, he was desirous of using any means to exclude him from the jury."

Over the objections of the accused, M. N. Landry was permitted to testify on behalf of the state. His testimony is to the effect that he did not talk with Oscar Dugas about this particular case, but he talked about other cases, wherein, in his opinion, justice had not been meted out, and he was "one willing to hang those who were turned loose, because the failure of justice was the cause of lynching throughout the United States"; that on his voir dire he said he had read and heard about the case, and that, if what he had read and heard was true, his opinion had been formed, but he told Mr. Pugh that he did not think that a man could form a strong opinion without hearing the witnesses or sworn evidence in court; that he did not any time express an opinion or show any prejudices against the Italian race; and that he sat as juror on a case where an Italian was the accused, and his verdict was, "Not guilty."

Defendant reserved and took a bill of exception to the admissibility of the testimony of Landry.

The motion for a new trial was overruled by the trial judge for the following reasons: "There is no proof whatever that Mr. M. N. Landry ever expressed or formed any fixed opinion, previous to his service on the jury, as to the guilt or innocence of the accused. There is no proof that Mr. M. N. Landry entertained any prejudice against the Italians as a class, but, on the contrary, it is shown that he had no ill feeling towards them."

The judge a quo further said: "The accused in this case has, in my opinion, had a fair and impartial trial, and the proof was so overwhelming and conclusive that an unbiased jury could do nothing but render the verdict which was rendered in the case."

Counter affidavits are permissible. Bishop's New Criminal Procedure, vol. 1, p. 780.

This is the practice in this state, and the exclusion of counter evidence would place the state at the mercy of the accused.

The facts set forth in the motion for a new trial are not sustained by the affidavit of Dugas. His conversation with Landry was about other cases, and it is a disputed question of fact whether Cafiero's case was mentioned at all. Conceding that Landry remarked "that he supposed that, if Cafiero was convicted, he would be granted a new trial," this is no proof that Landry's answers on his voir dire were false. We concur in the conclusion of the district judge that the facts set forth in the motion for a new trial are not established by the evidence.

After a careful consideration of all the bills of exception, we are constrained to affirm the sentence imposed on the defendant.

Sentence affirmed.