SOMMERYILLE, J.
On the trial of Avery Blount for murder, an attempt was made to prove that the killing had been done by one John Williams. Oscar Joiner defendant here, was a witness for Blount, and he swore that Williams was at his, Joiner’s, house at a certain time, and that Williams had in his possession a certain shotgun, the property of Blount.
Oscar Joiner, the defendant and appellant, was charged with the crime of perjury by bill of information in the district court for the parish of Tangipahoa as follows (omitting therefrom those parts not necessary to be considered in connection with the points suggested by bills of exceptions in this case):
“The undersigned district attorney * * * informs the said honorable court than one Oscar Joiner, * * * on the 2d day of April, in the year of our Lord nineteen hundred and nine (1909), * * * on the trial of a certain cause pending before the said Twenty-Fifth judicial district court of Louisiana, * * * wherein the state of Louisiana was plaintiff and Avery Blount was defendant, * * _* whereupon the whereabouts of one John Williams, at the hour of from about 7 o’clock till the hour of about 10 o’clock p. m. on Friday, January 22, 1909, became a material issue in the said cause, and the whereabouts of a certain ten-gauge, double-barrelled, breech-loading shotgun * * * became also a material issue in said cause, after having been sworn as witness in said cause by Alfred R. Lewis, clerk of court, * * * the said Oscar Joiner did willfully, knowingly, corruptly, and falsely swear that on Friday night, January 22, 1909, at the hour of about 10 o’clock p. m., * * * the said John Williams did arrive at and was present at the residence of the said Oscar Joiner; * * * and the said Oscar - Joiner did further swear that at the time of the arrival of the said John Williams at the residence of the said Joiner * * * the said John Williams did have in his possession the said lOgauge shotgun, * * * and that he, the said Joiner, was present at his residence together with Paul Lester and Howard Lester at the time of the arrival of the said John Williams with the said shotgun at said residence, * * * whereas, in truth and in fact, the said Oscar Joiner was not present at his said residence at the ‘hour of 10 o’clock p. m. * * * in the company of Paul Lester and Howard Lester and John Williams, and did not see the said John Williams with the said 10-gauge shotgun at his, Oscar Joiner’s, residence; * * * on the contrary, the said Oscar Joiner was present at the residence of Bassie Blanchard * * * from about the hour of 9 o’clock p. m. January 22, 1909, till about the hour of 2 o’clock a. m. January 23, 1909; and so the undersigned district attorney says that on the said date, April 2, 1909, the said Oscar Joiner willfully, knowingly, corruptly, and falsely did commit willful and corrupt perjury, contrary to the form of the statutes of the state of Louisiana in such cases made and provided, and against the peace and dignity of the same.”
Defendant moved to quash the above bill of information against him on the grounds (1) that it charged no crime known to law in the state of Louisiana; (2) that it charged that the whereabouts of John Williams and a certain shotgun at a given time became material issues in the Blount Case; but does not charge that defendant falsely swore to the whereabouts of Williams or the gun at the time specified. And he argues that *879 the bill of information does not set out the materiality of the testimony referred to.
First, the crime of perjury is clearly charged; second, defendant’s contention that the bill of information does not charge that he- falsely swore to the whereabouts of Williams or the gun between 7 and 10 o’clock on January 22, 1909, is not sustained by reference to the bill. It in part reads:
“The said Oscar Joiner did willfully, knowingly, corruptly, and falsely swear that on Friday night, January 22, 1909, at the hour of about 10 o’clock, * * * the said John Williams did arrive at, and was present at, the residence of' the said Oscar Joiner; * ® * and the said Oscar Joiner did further swear that at the time of the arrival of the said John Williams * * * he had in his possession the said 10-gauge shotgun, which had been offered in evidence as aforesaid on the trial of said cause,” etc.
Language could hardly be plainer in charging that defendant swore falsely as to the whereabouts of Williams at the time referred to. But defendant insists that it is not' charged that he willfully, knowingly, corruptly, and falsely swore that Williams carried a gun.
The bill of information sets forth the materiality of the testimony of the whereabouts of Williams and the gun on the Blount trial, and then charges that defendant knowingly and falsely swore about the presence of Williams at his, Joiner’s, house; and then, following a semicolon, it proceeds with the charge as to the gun, “and the said Oscar Joiner did further swear” that Williams had the gun in his possession. The words “did further swear” in this connection were tautological and useless; but they cannot destroy what has gone before. Defendant assumes a contrary position in argument to that pleaded in his motion for a new trial, where he alleges that “the indictment in this case charges that the accused did willfully, knowingly, falsely, and corruptly swear to the whereabouts of John Williams and a certain shotgun,” etc. The bill of information charges the materiality of certain evidence, specifying it, and then proceeds to-further charge that' defendant, after being sworn as a witness on the trial, knowingly and falsely swore to it, specifying it in detail, or parts. And, after reciting the gist of the evidence, proceeds to negative it all,, beginning with the words, “whereas in truth and in fact the said Oscar Joiner was not present,” etc., and the information concludes:
“And so the undersigned district attorney says that on the said date, April 2, 1909, the said Oscar Joiner willfully, knowingly, corruptly, and falsely did commit willful and corrupt perjury,” etc.
In the case of State v. Gonsoulin, 42 La. Ann. 579, 7 South. 633, we held that an indictment for perjury containing the charge that the defendant falsely, corruptly, knowingly, willfully, and maliciously did depose,, etc., was sufficient, under section 858 R. S. In the case of State v. Spencer, 45 La. Ann. 13, 12 South. 135, we- held to the same effect; and again in State v. Eddens, 52 La. Ann. 1462, 27 South. 742. All of these decisions are reviewed and approved in State v. Williams, 111 La. 1034, 36 South. 111.
The case of State v. Eddens, 52 La. Ann. 1462, 27 South. 742, is similar in some respects to the one under consideration, in that it charges the defendant with having falsely and knowingly sworn on a certain trial to-two facts or circumstances, without repeating the word “falsely,” etc.
[1] Mr. Wharton says:
“All the several particulars in which the prisoner swore falsely may be embraced in one-count, and proof of the falsity of one will sustain the count.” Wharton’s Criminal Law (9th Ed.) §§ 1301, 1299.
[2] It is also well recognized that:
“The particular averment or averments negativing and contradicting the matter alles-ed to have been falsely sworn to must be sufficiently ■definite and certain to apprise the accused of the particular charge or charges against which he ought to prepare to defend himself.” Fudge v. State, 57 Fla. 7, 49 South. 128; 17 Am. & Eng. Ann. Cas. p. 923.
*881 Here defendant is definitely charged with having sworn that John Williams had arrived with a shotgun at his, Joiner’s, house at a certain hour, and the bill of indictment proceeds:
“Whereas in truth and in fact the said Oscar Joiner was not present at his said residence at the hour of 10 o’clock p. m., * * and did not see the said John Williams with the said 10-gauge shotgun at his, Oscar Joiner’s, residence.”
Defendant is thus clearly and definitely informed of the particular charges against him so as to have prepared to defend himself.
Defendant argues that the bill of information should have contained a further negative, and told where John Williams was at the time mentioned. This may have been impossible. It was certainly unnecessary. 'It was enough, after setting forth what defendant had falsely sworn, to declare that defendant did not see Williams with a shotgun at his, Joiner’s, house at the time indicated. Defendant swore falsely when he testified that he saw Williams at his, Joiner’s, house, when he, Joiner, was not at, or near, his house at the time, as set forth in the bill of indictment.
The bill of indictment is sufficient, and the motion to quash was properly overruled.
[3] The next bill of exceptions is taken to the action or ruling • of the trial judge, who, when a witness for the state, was under cross-examination. It appeared that the witness, together with several others, had testified to the presence of defendant at a certain place, other than at his home, at a designated time. He was then asked by counsel for defendant for the purpose of attacking his credibility by showing bias or prejudice toward the accused:
“Q. As a matter of fact, has there not been some hard feelings existing between your family and Mr. Oscar Joiner’s here on account of Mr. Joiner’s relationship with your sister? A. I don’t know. Q. Was he not her beau, in other words, for quite a While? By the Court: The court is not going to allow that to go in. Mr. Houghton, attorney for the accused: There is. no objection, if the court please. By the Court: I am going to do my own objecting. The witness has answered that fairly and squarely. Mr. Sims: I think the court misconstrued my question. The Court: I think I understand the English language. Mr. Sims: Judge, will you hear me just a second? The Court: No, sir.”
To the bill of exceptions the court adds the following explanation:
“There were at least five witnesses who testified to the same facts as this witness, and 1 saw no legal right of the defendant to add insult to injury, and harrow the feelings of this witness simply because he was on the witness stand against him. The testimony of this witness was merely cumulative, and could have been entirely eliminated without changing the result of the trial in the least. Had he been the only; witness for the state who had testified to certain facts, or had his testimony been necessary to strengthen any point in the case, I would have made him answer the question, regardless of his humiliation and shame and just indignation.”
The court has erred. The accused had the right to attack the credibility of the witness who had testified against him; and one of the modes of attack is to show bias, or prejudice, ór ill feeling, if it can be shown. The state deemed the testimony of the witness important, although five other witnesses had already testified to the same effect, as stated by the judge. Defendant may have intended to put witnesses on the stand to contradict the witnesses for the state. The credibility of every witness who appears on the trial is subject to attack. It was for the jury alone to determine whether the testimony of the witness referred to “was merely cumulative and could have been entirely eliminated without changing the result of the trial in the least.” If the credibility of the witness for the state had been successfully attacked, the verdict might have been different.
It becomes unnecessary to pass upon other bills of exceptions in the record.
It is therefore ordered, adjudged, and decreed that the verdict and sentence appealed from be reversed and set aside, and that a new trial be ordered in this case.