LAND, J.
The indictment for perjury in this case was quashed, and the state has appealed. The motion to quash was made on the ground that the indictment charges no offense known to the laws of the state of Louisiana.
The indictment returned against the defendant is in words as follows:
“The grand jurors of the state of Louisiana, duly impaneled and sworn, in and for the body of the parish of Tangipahoa, in the name and by the authority of the said state, upon their oath find and present: That one W. W. Varnado, late of the parish of Tangipahoa, on the 8th day of June, in the year of our Lord one thousand nine hundred and twenty-two, with force and arms, in the parish of Tangipahoa, aforesaid, and within the jurisdiction of the Twenty-Fifth judicial district court of Louisiana, for the parish of Tangipahoa, in a certain cause pending in the honorable Twenty-Fifth judicial district court of Louisiana, in and for the parish of Tangipahoa, the said court having jurisdiction of said cause, wherein the state of Louisiana was plaintiff and Joseph Rini et al. were defendants under an indictment for murder, and being No. 4925 on the docket of said court, and in which said cause a verdict had been rendered against said defendants as guilty *580 as charged, and in which said defendants were seeking to have said verdict set aside and a new trial granted them on several grounds, one of which was that the said Richard Hope, one of the jurors on-said cause, some ten or fifteen days before the last trial of Joseph Rini and the five other Italians, had expressed the opinion that the verdict would be a capital one, and that' the men would be hanged, and that V. W. Varnado offered to bet said Ritchie Hope $25 or a $25 suit of clothes that .the men would not be hanged, and the said Ritchie Hope accepted the bet, bht the money was not put up, that the said Ritchie Hope was influenced by said bet in rendering said verdict against the said defendants, whereupon, on the trial of said motion, it became a material issue whether the said juror, Ritchie Hope, had entered into -a bet with said W. W. Varnado that the verdict would be a capital one and the men would be hanged, did, in order to assist said defendants in obtaining a new trial in said cause, and furnish a basis for a motion for a new trial by said defendants presented in said cause on June the 9th day, 1922, willfully, knowingly, corruptly, and falsely swear before Ray D. Magruder, a notary public in and for the parish of Tangipahoa, state of Louisiana, duly commissioned and qualified and having authority to administer oath in said cause, in the following words: That some ten or fifteen days before the last trial of Joseph Rini and the five other Italians he, the said Ritchie Hope, had a conversation about the matter in Osyka, Miss., during which conversation affiant expressed belief that the approaching trial would not result in a capital verdict, but there would be a mistrial. That the said Ritchie Hope expressed the opinion that the verdict would be a capital one, and .that the men would be hanged. Whereupon the affiant offered a bet of $25 or a $25 suit of clothes that the men would not be hanged, and the said Ritchie Hope accepted the bet, but the money was not put up, because the said Ritchie Hope did not have it with him, and the matter was dropped there, and has not been discussed again by affiant with the said Ritchie Hope— when in truth and in fact said Ritchie Hope did not make a bet with said W. W. Varnado, or express any opinion about the case to said Varnado, all of which was well known to the said W. W. Varnado when he made said false and untrue affidavit.”
Counsel for defendant contends that the indictment charges no offense, because it fails to show on its face that the oath was taken in a judicial proceeding, and that false swearing in a voluntary affidavit before a. notary public before whom no cause is pending, and under no statutory procedure, is not perjury.
Section 857 of the Revised Statutes of 1870 provides that:
“Whoever shall willfully and corruptly commit perjury, or shall by any means procure any person to commit corrupt and willful perjury on his oath or affirmation in any suit, controversy, matter or cause depending in any of the courts of this state,, or in any deposition or affidavit taken or made pursuant to its laws, upon conviction shall be imprisoned at hard labor,” etc. (Italics ours.)
[1] The indictment in this case clearly negatives the idea that the affidavit upon which the perjury is assigned is a mere voluntary affidavit by averring that said affidavit was made “in order to assist said defendants in obtaining a new trial in said cause and to furnish a basis for á motion for a new trial by said defendants presented in said cause on June 9, 1922.”
In other words, the indictment charges that the affidavit of defendant was made with reference to a new trial in the Rini Case, and for the distinct purpose of enabling defendants, who had been found guilty as charged, to obtain a new trial.
It is not pretended in the indictment that the affidavit was made before the clerk of the court in the case of the State v. Joseph Rini et al., No. 4925 on the docket of the Twenty-Fifth judicial district court.
[2] We are dealing here, not with perjury committed in a judicial proceeding, by taking a false and corrupt oath in that proceeding, but with perjury committed in an affidavit made before- a notary public “pursuant to its laws” — the laws of the state. Able counsel for defendant contends that the phrase “pursuant to its laws,” as used in section 857 of the Revised Statutes, refers only to the statutes of the state, and, unless the affidavit is required to be made by virtue of some particular statute, it is not such an affidavit as *581 is embraced within the section of the Revised Statutes denouncing the crime of perjury. We cannot concur in this view.
The decisions of this court constitute a very important part of “the laws” of this state, and, obviously, these decisions are not statutory laws.
In the case of the State v. Hornsby, 8 Rob. 586, 41 Am. Dec. 314, decided July, 1845, this court said:
“In England, there is no doubt, in case' of treason or felony, that a new trial cannot he granted when the proceedings have been regular; but if the conviction appears to be unjust to the judge, he may respite the execution, to enable the defendant to apply for a pardon, but this court has decided, in consonance, as it thinks, with the great current of American decisions, that all judges who are empowered to hear and determine indictments for crime, are invested with a discretionary power to grant new trials in capital cases as well as in those of misdemeanor, where upon a sufficient showing, touching the merits or irregularities in the proceedings, justice and humanity demand it. * * * We have, therefore, no doubt of our authority to grant, and of the defendant’s right to demand, the new trial which was awarded him on the former appeal.” (Italics ours.)
The Hornsby Case has been repeatedly affirmed, and the right of a defendant to apply for a new trial in all criminal cases has been uniformly recognized and enforced by the decisions of this court.
[3] Yet the law of this state which secures to the defendant the right to demand a new trial in criminal cases is derived neither from the Constitution nor from the statutes of this state. It emanates solely from the decisions of this court, which constitute a part of “the laws” of this state upon this important subject. Applications for new trials on the ground of newly discovered evidence must always be received with caution. The inducements to. false swearing on the part of the person convicted are obvious, and therefore the rule is well settled that the unsupported affidavit of the accused to the motion is insufficient, and must be corroborated by the affidavits of other persons than the accused, and, if possible; by those of the newly-discovered witnesses themselves. Blarr’s Crim. Juris, vol. 2, § 713, citing numerous cases: State v. Louvier, 129 La. 924, 57 South. 270; State v. Sims, 117 La. 1039, 42 South. 494; State v. Jones, 112 La. 980, 36 South. 825; State v. Callian, 109 La. 351, 33 South. 363, etc.
[4-6] The method of hearing motions for new trial is left to the discretion of the judge. If the reading of the motion imparts to him sufficient knowledge to enable him to intelligently dispose of the matter, he cannot be arbitrarily required to delay his ruling for the purpose of further hearing or argument. The accused is not entitled to compulsory process to obtain witnesses in support of his motion for a new trial, and the examination of witnesses to prove newly-discovered evidence is within the discretion of the trial judge. Counter affidavits and evidence are admissible, as when it is sought to prove that a juror, who had been examined on his voir dire, had prior to the trial expressed an opinion as to the guilt’of the accused. State v. Gauthreaux, 38 La. Ann. 608; State v. Boasso, 38 La. Ann. 202; State v. Jones, 46 La. Ann. 545, 15 South. 402; [1] State v. Cafiero, 112 La. 453, 36 South. 492, citing 1 Bish. New Cr. Proc. p. 780.
[7] It is therefore clear from these decisions that the laws of this state grant to an accused the right to demand a new trial, that the affidavits of the newly-discovered witnesses are necessary in support of a motion for a new trial, and that such motion may be tried solely upon such affidavits and upon counter affidavits filed by the state.
It follows, therefore, that such affidavits are required “by the laws” of the state, and fall within the purview of section 835 of the Revised Statutes, denouncing the. crime of perjury.
*584 [8] Act 7 of 1877 declares:
“That from and after the passage of this act oaths and acknowledgments, in all cases, may be taken or made by or before any notary public duly appointed and qualified in this state.” (Italics ours.)
This act does not require that the oaths to be taken shall be in any statutory proceeding before the notary. While notaries are competent to administer such oaths in statutory-proceedings, they are also competent under this act to receive them “in all cases,” which necessarily includes all civil and criminal cases in which affidavits are required by law to be made in a motion for a new trial, continuance, etc.
In the ease of State v. Chandler, 42 Yt. 448, it was said:
“We have no doubt but that a party may be guilty, technically, of the crime of perjury in knowingly and willfully swearing to a false affidavit, made in support and aid of a petition for a new trial. The proceeding is authorized by law and is judicial; and the practice in respect to the use of affidavits is provided for by a rule of the court. In the present case the affidavit of the respondent was served and filed with the petition, and, if material to the issue involved in that cause, was entitled to be used on the hearing. Under such circumstances it would be indeed singular if there was no accountability in'respect to it.”
See, also, Kemp v. State, 28 Tex. App. 519, 13 S. W. 869.
In the case of State v. Matlock, 48 La. Ann. 663, 19 South. 669, this court said:
“The indictment charges that the perjury was the false swearing to an affidavit for a continuance. The affidavit was made in a judicial proceeding, was material in the controversy pending, as it had direct reference to the disposition of the case. But the false swearing to such an affidavit is directly within the meaning of section 857, Revised Statutes.” (Italics ours.)
In the case of the State v. Shupe, 16 Iowa, 40, 85 Am. Dec. 488, the court said, citing State v. Lavalley, 9 Mo. 834:
• “Neither can a party escape the penalty denounced against those who swear falsely, because his evidence was not given upon the trial of the issue between the parties litigant; for all false oaths taken, and which are material upon any and every collateral issue in the progress of a cause, are equally punishable, as if taken upon the trial of the main issue.”
The court, continuing, said:
“The issue before the court at the time of the taking of the oath by the defendant, which is alleged to be false, was the collateral issue arising upon the motion for a continuance. One material fact pertinent to that issue was the absence of the witness from the county, and the consequent inability to procure his attendance; and it is upon the sworn statement of the defendant, as to this material fact, that the perjury is assigned. It would be as inconsistent with law as it is with good morals and common sense, to permit the party to escape the penalty of his perjury, by asserting that his false oath was not material to the issues in the case, the trial of which he had thereby delayed, to the injury of his adverse litigant, and contrary to law and justice.”
See, also, Morrell v. People, 32 Ill. 499; Sanders v. People, 124 Ill. 218, 16 N. E. 81; State v. Johnson, 7 Blackf. (Ind.) 49; State v. Windstandley, 151 Ind. 316, 51 N. E. 92; State v. Hobbs, 40 N. H. 229.
[9] We therefore conclude that the affida-. vit made by defendant in this case before a notary public “in order to assist said defendants in obtaining a new trial in said cause,” etc., was not a voluntary affidavit, but one required by “the laws” of the state, an affidavit admissible as evidence in a judicial proceeding in support of a motion for a new trial, and that said affidavit was made before a person competent to administer the necessary oath to affiant.
[10,11] Defendant insists that no perjury is charged in the indictment in this case, as the false affidavit is alleged to have been made on June 8th, and the motion for new trial was not presented in court until June 9th, as shown upon the face of the indictment. The perjury, however, is not assigned as committed in the pending case of the State v. Joseph Rini et al. upon oath administered to defendant by the clerk of the dis *585 triet court; but the specific charge is that the perjury was committed in an affidavit sworn to before a notary public in and for the parish of Tangipahoa.
The statute declares that “whoever shall willfully and corruptly commit perjury * * * in any deposition or affidavit taken or made pursuant to its laws, upon conviction shall be imprisoned,” etc.
The crime of perjury under the statute is therefore complete when the false affidavit is willfully and corruptly made before a person having competent authority to administer the oath, if such affidavit is required by law. The statute does not provide that such false affidavit shall be used thereafter in some judicial proceeding, though this may be done, in order to complete the offense of perjury.
[12] The statute includes perjury committed either by judicial or by nonjudicial oath, and the essence of the crime is the false, willful, and corrupt swearing in either case.
The case of the State v. Rini et al. was pending in the district court of Tangipahoa parish at the time this affidavit was made by defendant before the notary. The defendants had been convicted, but not sentenced. A new trial was contemplated in the case, and the motion for same was actually presented the day after the affidavit was made by the defendant. This affidavit shows upon its face that its sole purpose was to impeach and invalidate the verdict of guilty returned by the jury in the Rini Case.
If the contention of counsel for defendant is well taken in this case, a defendant convicted of the gravest crime could procure in advance false affidavits made before a notary public, and annex such affidavits to a motion for a new trial filed thereafter and, if he succeeded in obtaining a new trial, upon such corrupt testimony, neither could the defendant be punished for subornation of perjury, nor could his false witnesses be dealt with for the perjury committed by them. To place such a construction upon the statute is not only contrary to its plain intent, but is destructive of the efficient administration of public justice. To tolerate subterfuges and evasions of this character is to set the seal of approval of this court upon conspiracies to obstruct the due course of justice and to defeat its ends. v
[13] The indictment in this case alleges that, “whereupon on the trial of said motion it became a material is§ue whether the said juror, Ritchie Hope, had entered into a bet with said W. W. Yarnado,” etc.
Defendant asserts that it is not sufficient to charge that the alleged false matter became “a material issue”; it must be charged that the matter was “material to the issue.” State v. Morrough, 132 La. 655, 61 South. 726.
While in an indictment for perjury it is essential to charge that the alleged false statement was material to the issue, and while his requirement is not satisfied by the allegation that the evidence given was on a material issue involved in the case, as the testimony might be on a material issue, yet still not material to the issue in the ease; however it is well settled that the indictment may show the materiality of the alleged false testimony either by the allegation that it was material ór by the allegation of facts-from which its materiality will appear. State v. Smith, 126 La. 138, 52 South. 244; State v. Schlessinger, 38 La. Ann. 564.
[14] The allegation in the indictment that the false testimony was to the effect that 10 or 15 days before the trial the juror had declared that defendant would be found guilty and hanged, and had made a bet of $25 or a $25 suit of clothes with affiant that this would be the result of the trial, clearly shows the materiality of such testimony, since its apparent effect would be to induce the trial judge to grant the motion for a new trial, as such testimony, if it were true, would *588 show that the juror was incompetent, as he had already formed a fixed and deliberate opinion as to the guilt of the defendants before the trial, and had 'answered falsely on his voir dire that he would give to defendants a fair and impartial trial. Such testimony, if it were true, would also convict the juror of corrupt influences in arriving at the verdict in the case.
[15] As the materiality of the testimony upon which the perjury is assigned appears from the allegation of facts contained in the indictment, it is unimportant that the indictment is insufficient in its allegations as to the materiality of such testimony. Defendant contends that the indictment in this case is fatally defeetivev because it omits the word “feloniously.” Perjury is not a common-law offense in this state, and the common-law form of indictment has been expressly modified by statute. It is sufficient to set forth in the indictment the substance of the offense charged, and by what cobrt, or before whom the oath or affirmation was taken (averring such couyt or person to have competent authority to'administer the same), together with a proper averment to falsify the matter wherein the perjury is assigned. R. S. 1870, § 858.
Perjury was a misdemeanor at common law, and our statute on the subject does not contain the word “feloniously,” which is, therefore, not sacramental in an indictment for this offense. State v. Matlock, 48 La. Ann. 663, 19 South. 669; State v. Gonsoulin, 42 La. Ann. 581, 7 South. 633; State v. Joiner, 128 La. 879, 55 South. 560.
[16] Defendant also complains that the scienter is not properly alleged in said indictment.
The averment in the indictment is as follows:
“When in truth and in fact said Ritchie Hope did not make a bet with said W. W. Varnado, or express any opinion about the case to the said Varnado, all of which was well lonown to the said W. W. Varnado when he made said false and untrue affidavit.”
The indictment charges also that defendant “willfully, Icnoiuingly, corruptly, and falsely” swore before the notary public to the matter assigned as perjury, and sets forth the facts sworn to in detail.
This is a sufficient compliance with the law. State v. Smith, 149 La. 700, 90 South. 28.
[17] Defendant attacks the validity of said indictment on the ground that it is not alleged that the defendant. Varnado was sworn or took his oath.
The indictment charges that defendant “did, in order to assist said defendants in obtaining a new trial, in said cause and furnish a basis for a motion for a new trial, by said defendants presented in said cause Jizne the 9th day, 1922, willfully, knowingly, corruptly, and falsely swear before Ray D. Magruder, a notary public in and for the parish of Tangipahoa, state of Louisiana, duly commissioned and qualified and having authority to administer oath in said cause, in the following words, * * * all of which was well known to the said W. W. Varnado when he made said false and untrue affidavit.”
The indictment distinctly charges that the defendant made a false and untrue affidavit before the notary, and that he willfully, knowingly, corrruptly, and falsely did swear to certain facts set out in that affidavit. These allegations clearly charge defendant with committing perjury in the affidavit in question. To allege that a person did swear to certain facts before a notary public, and that he did make a false and untrue affidavit before that officer, is to charge ex vi termini that he was sworn.
We therefore conclude that the indictment in this case is valid, and that the judgment quashing said indictment is erroneous.
It is therefore ordered that the judgment *589 appealed from be annulled and set aside, that tbe indictment be reinstated on the docket of the Twenty-Fifth judicial district court, and that the ease be proceeded with in due course and according to law.
ST. PAUL, J., dissents.

 Reportea in lull in the Southern Reporter; reported as a memorandum decision without opinion in the Louisiana Annual Reports.