164 So. 616

**STATE v. HANDY.**

No. 33491.

Nov. 4, 1935.

Rehearing Denied Dec. 2, 1935.

R. F. Walker, W. T. Bennett, and A. B. Parker, all of Baton Rouge, for appellant.

Gaston L. Porterie, Attorney General, James O'Connor, Asst. Atty. Gen., John Fred Odom, Dist. Atty., and Fred S. Le Blanc, Asst. Dist. Atty., both of Baton Rouge, and Lessley P. Gardiner, Sp. Asst. Atty. Gen., for the State.

BRUNOT, Justice.

The defendant was prosecuted upon an indictment charging him with murder. He was tried by a jury, convicted of manslaughter, and, after a motion for a new trial had been filed, heard, and overruled, he was sentenced to serve a term of imprisonment in the Louisiana State Penitentiary, at hard labor, for not less than four nor more than

twelve years. He appealed from the verdict and sentence, and he relies upon seven bills of exception for a reversal thereof.

## Bills Nos. 1, 2, 3, and 4.

These bills may be considered together because they were reserved to rulings of the court excluding testimony, tendered by the defendant, to prove that the deceased had threatened and assaulted the defendant some time prior to, but on the same day of, the homicide. On pages 13 and 14 of defendant's brief, the questions which were asked and objected to, and on which objections the rulings of the court were based, are correctly stated. The first question was addressed to the defendant. While testifying in his own behalf, he was asked: "During the trip from Alsen to Lafayette Street did Miller (the decedent) assault you at any time on the way?" While Emile Brown, a defense witness, was on the stand, he was asked this question: "In the presence of Dunn and yourself did you see the deceased shake his fist in this man's (defendant's) face and tell him to either pay him that fifty cents or else he would follow him until he paid him?" While defendant's witnesses, Monget Talbert and James Dunn were on the stand, each of said witnesses was asked the same question which was propounded to Emile Brown that we have quoted supra. We think the judge's per curiam to bill No. 1 disposes of these bills, especially because the record of the testimony taken on the trial of the case, prior to the interrogation of the defendant and his witnesses Brown, Talbert, and Dunn, is accurately summarized in the per curiam.

It may be noted here that the judge refused to sign bill No. 1 because the ruling complained of was not excepted to when made, and no reservation of a bill was noted in the court minutes. The per curiam is as follows:

"The State has proved by direct testimony of four disinterested witnesses that the accused stabbed the deceased on Lafayette Street, in the City of Baton Rouge, on December 8, 1934, at about 10:40 o'clock in the morning. Counsel for the accused placed the accused, Robert Handy, on the stand as the first witness for the defense, and started to question him about what had happened on a truck on which the deceased and the accused had ridden to town from Alsen, a village about ten miles north of Baton Rouge, earlier that morning, said truck having arrived in Baton Rouge between 7:00 and 7:30 o'clock. Before introducing any evidence tending to show an overt act or hostile demonstration on the part of the deceased, except the unsupported testimony of this witness (the accused), counsel for the accused asked the accused the following question, to-wit: 'During this trip from Alsen to Lafayette Street did Miller (the deceased) assault you at any time on the way?' This was objected to by the District Attorney on the ground that the proper foundation had not been laid for the introduction of evidence of antecedent menaces, threats, etc. This objection was sustained by the Court, for the reason urged by the District Attorney. Counsel thereupon failed to except to the ruling of the Court and failed to reserve a bill of exceptions.

"Pretermitting the question of counsel's failure to except to the ruling of the court and to reserve a bill of exceptions, the testimony sought to be elicited from the witness was clearly inadmissible, for the reason that the defendant had not introduced any evidence whatever to show an overt act or hostile demonstration on the part of the deceased at the time and place where the homicide was committed, except his own testimony. What took place on the truck early that morning was admissible in evidence only after the defense had established some overt act or hostile demonstration on the part of the deceased to the satisfaction of the Court. Marr's Criminal Jurisprudence, Sections 68 and 70 and cases there cited."

### Bill No. 5.

It is alleged in this bill that Edgar McClure was tendered, as a defense witness, for the purpose of proving the previous bad character and belligerent nature of the deceased. The district attorney objected to the testimony on the ground that the proper foundation for its admission had not been laid, and the court sustained the objection. The judge's per curiam to the bill follows:

"Counsel for the accused placed upon the stand one Edgar McClure, who testified that the accused enjoyed a good reputation for peace and quiet. This witness was then asked if he had heard the character and reputation of the deceased for peace and quiet discussed. This was objected to by the District Attorney on the ground that the proper foundation had not been laid. The Court sustained the objection, for the reason that the accused had failed to es-

tablish, to that degree of certainty the law requires, an overt act or hostile demonstration on the part of the deceased, the only testimony tending to show an overt act or hostile demonstration on the part of the deceased being that of the accused himself and one James Williams, which was contradicted absolutely by the State's four disinterested witnesses."

In State v. Nash, 45 La.Ann. 1137, 13 So. 732, this Court said:

"It is not error to exclude testimony as to the character of deceased * * * unless it is first shown that the accused were aware of his character as a dangerous and quarrelsome man, and the foundation has also been laid by proof of some overt act on part of deceased."

On an application for a rehearing in the Nash Case (45 La.Ann. 1143, 13 So. 734) the court's attention was called to the fact, which was disclosed by the record, that one of the jurors who tried the accused was incompetent to serve as a juror. For that reason a rehearing was granted, and on rehearing the verdict and sentence were annulled and the case remanded for a new trial. The retrial resulted in the same verdict and sentence. When the case was again appealed to the Supreme Court (State v. Nash, 46 La.Ann. 194, 14 So. 607, 614) Chief Justice Nicholls, the organ of the court, on the application of the defendant for a rehearing, said:

"If the defendant has any cause of complaint in this case it is that, under its facts, he was entitled to introduce testimony to prove communicated and uncommunicated

threats and the dangerous character of the deceased, and that he has been unjustifiably deprived of that right, and, as to the effect thereof, he has been legally injured. * * * If, in this state, evidence as to communicated and uncommunicated threats and as to violent character became ipso facto admissible by the fact that one or more witnesses testified directly as to the existence of an overt act on the part of the deceased, this case would present no difficulty whatsoever, * * * but the practice in Louisiana has not been to permit evidence upon those points to be introduced, and go to the jury, simply because one or more witnesses may have given testimony to the effect that the deceased had committed an overt act. The practice has been for the district judge to determine whether or not there was, on the evidence in the case as a whole, evidence which would tend and go to establish legally the overt act, and upon his conclusions on that point has been made to depend and rest the admissibility of the testimony. In dealing with that question, the right of the judge to consider the credibility of the different witnesses has been repeatedly recognized by this court. It may be that this practice lodges a power too great in the judge, and works wrong to accused parties, as there is great difficulty in reaching and reviewing the action of the district judge; it may be, as res nova, that it would have been better to have held that, the moment one or more witnesses testify to an overt act, testimony of threats and character should ipso facto be admissible, and should go to the jury, to be weighed and determined by it with other circumstances of the case; but certainly, since the Ford Case [37 La.Ann. 443] that has not been the practice. The right to have this particular kind of testimony admitted is not, in this state, considered absolute; it is only exceptionally admissible, and the condition precedent upon which it is admissible is that the judge should have ruled that under the evidence, as a whole, the question of the overt act had become a relevant fact in the case."

In this connection, we also cite Marr's Criminal Jurisprudence, section 7, pp. 135, 136; article 482, Code of Criminal Procedure.

### Bill No. 6.

This bill was reserved to the overruling of defendant's motions for a new trial. During the trial of the motions, which consist of an original and supplemental motion, the defendant offered certain testimony which was excluded by the court. There is nothing in the minutes to indicate that this particular ruling was excepted to. The minute entry appears on pages 7 and 8 of the transcript, and it is as follows:

"The accused. through counsel and with leave of court, filed herein an amended and supplemental motion for a new trial. The case was then taken up on the motion for a new trial, the evidence was introduced and the matter argued and submitted to the court. For the reasons orally assigned, the Court overruled said motion for a new trial to which ruling of the court counsel for the accused excepted and reserved a bill of exceptions."

Notwithstanding the quoted minute entry, this bill has been treated by the trial

judge as one reserved timely, and we shall, therefore, consider it. The judge's per curiam to the bill is as follows:

"On the trial of the motion for a new trial counsel for the accused sought to introduce testimony to prove the allegations set forth in the motion for a new trial and in the supplemental motion for a new trial. The District Attorney objected to the introduction of this testimony on the ground that it was inadmissible because it was either cumulative or impeaching in its nature, and that even if the Court permitted its introduction as alleged into evidence, still the Court would not be warranted in granting the relief prayed for. The Court sustained this objection because it was convinced from a careful reading of the motion for a new trial and the supplemental motion for a new trial that the testimony sought to be introduced was inadmissible, being objectionable either because it was merely cumulative or impeaching in its character.

"Counsel for the accused then asked the Court's permission to have the purported facts alleged in the said two motions put in the form of affidavits and sworn to by the said witnesses named in said motions. The State objected to the filing of the affidavits of the said purported witnesses: The accused had not attached any supporting affidavits to the motion for a new trial and the supplemental motion for a new trial, and the Court took the position that it was too late on the trial of said motions to halt the proceedings to grant to counsel for the accused time to prepare and attach said affidavits to the said motions. Besides, coun-

sel had set forth in said two motions all the purported facts he expected to prove on the motion for a new trial and they were, therefore, in the record for the inspection of the appellate court."

■ The record discloses that neither of the defendant's motions for a new trial are supported by affidavits of the alleged newly discovered witnesses, and that no explanation of this omission was made. We quote from Marr's Criminal Jurisprudence, section 713, p. 110, the following:

"The failure to furnish the affidavits of the newly-discovered witnesses must be explained or accounted for."

In State v. Varnado, 154 La. 575, 97 So. 865, 868, the question we are considering was carefully considered by this court, and, through its organ, Justice Land, the court said:

"The law of this state which secures to the defendant the right to demand a new trial in criminal cases is derived neither from the Constitution nor from the statutes of this state. It emanates solely from the decisions of this court, which constitute a part of 'the laws' of this state upon this important subject. Applications for new trials on the ground of newly discovered evidence must always be received with caution. The inducements to false swearing on the part of the person convicted are obvious, and therefore the rule is well settled that the unsupported affidavit of the accused to the motion is insufficient, and must be corroborated by the affidavits of other persons than the accused, and, if pos-

sible, by those of the newly-discovered witnesses themselves."

In this case, however, it appears that the alleged newly discovered witnesses were present in court, and, upon defendant's proposal to tender them as witnesses in support of the allegations of his motions, the court, upon the objection of the district attorney, excluded their testimony upon two grounds, viz., that it merely corroborated, or that it impeached the credibility of witnesses that were examined on the trial. Cumulative or impeaching testimony is not a ground for a new trial. Article 511, Code Cr. Proc. While the evidence offered by the state, on the trial of the case, is not in the record, a summary of the pertinent part is given in the per curiam to this bill, quoted supra, and by comparison thereof with the allegations contained in the defendant's original and supplemental motions for a new trial, we are convinced that the effect of the tendered testimony, if admitted, would merely corroborate the defendant's testimony and impeach the credibility of the state's witnesses, who are shown by the record to be disinterested persons. We therefore find no reversible error in the ruling complained of in this bill.

### Bill No. 7.

One of the allegations of the motion for a new trial attacks the official capacity of the deputy sheriff who was in charge of the jury throughout the trial of this case. The deputy was regularly appointed, as such officer, by the sheriff. His appointment was not approved by the Bureau of

Criminal Identification and Investigation. Pending the judicial determination of the appointive powers of the district judge, the deputy was serving, as such officer, by appointment of the judge. Considered from any standpoint, he was a de facto officer, and his acts were legal.

For the reasons stated, the verdict and sentence appealed from are affirmed.

O'NIELL, C. J., dissents from the ruling on bills of exception Nos. 1 to 6 inclusive.

FOURNET, J., concurs in decree.