SCHOTT, Judge.
After a bench trial, defendant was convicted of aggravated burglary and was sentenced to six years at hard labor. He assigned two errors, first, that the state failed to prove the identity of the perpetra *259 tor beyond a reasonable doubt; and, second, that the trial court wrongfully denied his motion for a new trial after he showed he was not the perpetrator of the offense.
On the evening of June 4, 1983, Mrs. Worlita Carter, had gone to the Lafitte project apartment of her estranged husband, with her eleven year old son, a friend, and her two children. The husband was out of town. They watched television programs from 8 P.M. until 10:35 when the friend and her two children left. As Mrs. Carter and her son were also preparing to leave, the boy left to put his bicycle into the automobile which was parked on the street a few doors down from the apartment. When he left, Mrs. Carter hooked the screen door but left the wooden door ajar. A few moments later she heard the screen door being shaken so she unhooked it thinking her son was returning. At that moment someone lunged through the door, began attacking Mrs. Carter, threatened to kill her, and demanded her money. She struggled with him and screamed but he made off with several hundred dollars. The next morning Mrs. Carter was on her way to a nearby Schwegmann’s store when she saw shoes on a man through the door of a neighboring apartment which shoes she recognized as those worn by her assailant. She called the police who went to the neighboring apartment and brought the defendant out to Mrs. Carter. She identified defendant as her robber and recognized his clothes as the ones he was wearing the night before.
By his first assignment defendant is simply rehashing evidence which was rejected by the trial court. Defendant attacks Mrs. Carter’s identification of him but she testified that she had a good look at the robber while he was struggling with her and had no doubt that the defendant was the man. Defendant makes much over the fact that Mrs. Carter described the robber as six feet tall when, according to his supplemental brief to this court, page 4, he is but 5'6" tall, but this must be considered in the light of Mrs. Carter’s own admission that she is not a good judge of height, especially since she is but 5'1". The trial judge was aware of this discrepancy between the victim’s estimate of defendant’s height and the actual measurement, but believed her testimony anyway. We accept this finding for appeal purposes.
The trial judge likewise evaluated defendant’s own testimony and that of his girl friend and her sister that he was watching television at their apartment when they heard a scream from Mrs. Carter’s nearby apartment. It was within the province of the trial court to weigh defendant’s alibi defense, and nothing in the record would warrant this court’s substituting its judgment for that of the trial court on such an issue. However, we do note that there are a number of contradictions in the testimony of defendant and the two sisters which help to explain why the trial judge rejected -this defense. This first assignment has no merit.
By his other assignment defendant contends that the trial judge erred as a matter of law in denying his motion for new trial. He relies on LSA-C.Cr.P. Art. 851 which provides that the court shall grant a new trial whenever:
“(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;”
In support of the motion for new trial defendant offered the testimony of Cathy Regis, another sister of defendant’s girlfriend, Hellane Regis. Before summarizing this testimony, however, we should first have the benefit, as did the trial judge, of the testimony at trial of defendant, Hel-lane and her other sister, Izetta Regis.
Defendant testified as follows: He arrived at Hellane’s apartment at about 8:10 P.M. and the only person there was Cathy who was asleep. He walked right into the unlocked apartment, told Cathy he was there, and started watching television. Shortly after, Hellane arrived and they *260 watched television until 8:55 when he went to the nearby Schwegmann store. He returned after shopping at 9:05 and watched television with Hellane until 10:35. At that time Hellane heard a scream; he didn’t hear it because he was dozing; and at this time Cathy was still in the bedroom. Shortly afterwards, Izetta arrived from her mother’s nearby apartment and said she heard a scream also. Later on he, Cathy, and Hellane went out to shoot pool and play Pac Man, still later they and Izetta went bar hopping, and they returned to Hellane’s apartment at 7 A.M. the next morning. He was in his same clothes as the night before when the police came to the door.
Hellane testified as follows: She and her two sisters were all in her apartment when defendant arrived at 8 P.M. Izetta left at about 9:45 to use a phone and returned at 10:25. In the meantime Cathy had left the apartment and did not return until 1:15 A.M. Both Hellane and Izetta heard a scream. Defendant was never out of her sight from 8 P.M. to 7 A.M. He never went to Schwegmann’s as he testified he did.
Izetta testified as follows: She arrived at Hellane’s at 9 P.M. when defendant, Cathy, and Hellane were all there. The four of them watched television until 10 P.M. when she left to use a phone. On her way back she heard a scream. When she returned to the apartment defendant, Hellane, and Cathy were still watching television.
The case was tried on November 30, 1983, and defendant was sentenced on January 9, 1984. On August 13, 1984 defendant filed a motion for new trial, the motion was tried on the testimony of Cathy Regis on September 17, 1984, and the motion was denied on that day. Cathy Regis testifies as follows: Between 6 and 7 P.M. on June 4 she went with her cousin and a friend of his to the neighboring apartment of one Nubby, who was Mrs. Carter’s husband. She purchased three marijuana cigarettes from Nubby as he had often done in the past. She went home and smoked. Later she was sitting in the living room with defendant, Hellane, and Izetta when she heard a scream. She looked out and saw the man who had been at Nubby’s with her and her cousin running down an alley. She described this man as “way taller” than she was, he being 5'6" or 7" and she being 5'1" (the same height difference between defendant and Mrs. Carter). At trial time she was in Baton Rouge, but her mother knew where to reach her as did her two sisters. She came back to New Orleans around April, 1974, and found out then about defendant’s conviction. However, the first time she said anything about this was shortly before the motion for new trial was filed in August. She tried to tell the police about this when they came to get defendant the morning after the crime but they wouldn't listen.
Defendant claims entitlement to a new trial because Cathy’s story was not discovered despite the exercise of reasonable diligence and if it had been told at trial the judgment of guilty would probably have been different. We disagree on both counts. Defendant’s attorney was in touch with Hellane and Izetta and put them both on the stand. Her story was discoverable through them. It is incredible to suppose that these witnesses didn’t tell defendant or his attorney that their sister could identify the robber as someone other than defendant. And they knew exactly where she was, in Baton Rouge, easily available to defendant. In addition, defendant fails to meet the second test of Art. 851(3) in that if Cathy had testified the judgment would probably have been the same.
The best that can be said for her testimony is that it cumulates more testimony on defendant’s alibi defense. Cathy has him watching television while the victim was screaming next door, much the same as her two sisters. On the other hand, defendant testified that Cathy wasn’t in the room with him when Hellane heard the scream, but she was in the bedroom; Hellane said she wasn’t even in the apartment until three hours later; and only Izetta said she was in the room with defendant and Hel-lane. But no one testified that Cathy *261 looked out the door and saw someone she knew running down the alley. When Cathy’s testimony is contrasted with that of the others, and the inconsistencies from it are added to those already contained in the testimony of the others we cannot conclude that this testimony would probably have changed the guilty judgment.
A new trial will not be granted unless this new evidence is of such nature that it would probably have changed the judgment of the trial court. Additionally, the trial court has discretion to grant or deny a new trial on the ground of newly discovered evidence which is suspicious or incredible as in this case. State v. Lee, 340 So.2d 180 (La.1976). We find no abuse of discretion here. This assignment is merit-less.
We have examined the record for errors patent and find none.
Accordingly the conviction and sentence are affirmed.
AFFIRMED.