WATKINS, Judge.
Steve Marler was charged by bill of information with two counts of molestation of a juvenile, in violation of LSA-R.S. 14:81.2. He was tried by a jury, which convicted him as charged on each count. The trial court imposed two concurrent terms of fifteen years at hard labor. Defendant appealed, urging six assignments of error, as follows:
1. The trial court erred by sustaining the state’s objection to cross-examination of the victim’s mother.
2. The trial court erred by permitting the state to ask an excessive number of leading questions.
3. The trial court erred by denying defendant’s “motion to dismiss” after the state’s evidence failed to establish the date and geographical location of the commission of the offense.
4. The trial court erred by failing to rule on a defense objection to the state’s closing argument.
5. The trial court erred by denying defendant’s motion for a new trial.
6. The trial court imposed an excessive sentence.
FACTS
Defendant was charged with the sexual abuse of a seven year old girl, who lived with her mother and older sister near the house defendant shared with his parents. The offense occurred in the victim’s home, located in Franklinton, Louisiana. Defendant, the victim's mother, and the mother’s fiance watched a movie on television together. Thereafter, defendant volunteered to sit with the children while the other adults ran errands. Both of the girls were in bed when their mother left. The victim testified that defendant repeatedly came into her room and awakened her by calling her name. On one occasion, he pulled her panties aside and stuck his finger in her vagina and her rectum. He also licked her vagina.
Defendant stipulated that he was more than seventeen years of age and more than three years older than the victim. He admitted that he had stayed alone with the victim and her sister while their mother ran errands, but he denied that he had touched the victim. Defendant further related that, a few days before the incident was alleged to have occurred, he rejected sexual advances made by the victim’s mother, there *540 by implying that the accusation was made in retaliation for his rejection.
RESTRICTION OF CROSS-EXAMINATION
By assignment of error number one, defendant contends that the trial court erred by restricting his cross-examination of the victim’s mother. He claims that his rights of confrontation and cross-examination were abridged by the court’s ruling denying him the opportunity to question her about medical treatment obtained by the victim.
During the cross-examination of the victim’s mother, the following exchange occurred:
Q When did you report this to the Franklinton Police Department?
A If I’m not mistaken, it was two days after it happened.
Q Two days?
A Yes, sir.
Q Did you have the child examined by a physician?
A Yes, sir.
Q When?
A That was two days after.
Q Also two days. You didn’t go to the police right away?
A No, sir.
Q You didn’t take her to the doctor right away?
A No, sir.
Q Is the doctor here?
A No, sir.
Q Do you know a Diane Corkern?
A Yes, sir.
Q Did you ever tell Diane Corkern that you had a doctor’s report?
The state objected to the question on the grounds that it called for a hearsay answer and that the information was irrelevant. The court sustained the objection. Defendant claims this ruling denied him effective cross-examination.
The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution “to be confronted with the witnesses against him.” This right is secured for defendants in state as well as federal criminal proceedings. Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923, 928 (1965). The confrontation clause of our state constitution directly affords each accused the right “to confront and cross-examine the witness against him_” La. Const, art. I, § 16.
In State ex rel. Nicholas v. State, 520 So.2d 377, 380 (La.1988), the Louisiana Supreme Court set forth the purpose of cross-examination, as follows:
The three main functions of cross-examination are: (1) to shed light on the credibility of the direct testimony; (2) to bring out additional facts related to those elicited on direct; and (3) to bring out additional facts which tend to elucidate any issue in the case.
Nevertheless, the ruling of the trial judge as to the scope and extent of cross-examination should not be disturbed in the absence of an abuse of discretion. State v. Coleman, 406 So.2d 563, 568 (La.1981).
Although defendant claims that the trial court’s ruling prevented him from exploring “any medical evidence or the witness’ perception of that evidence,” our review of the proceeding does not reveal that such an abridgement occurred. At the time of the state’s objection, defendant was questioning the witness about statements she made to another person concerning medical reports; he did not attempt to question her about the treatment her daughter received or the results of medical examinations. Therefore, the information sought by defendant was irrelevant; we find no abuse of discretion in the court’s ruling sustaining the state’s objection.[1]
*541 LEADING QUESTIONS
In defendant’s second assignment of error, he complains of the trial court’s action overruling his objection to leading questions asked of the victim by the state. Defendant acknowledges that leading questions can be asked of a child-witness. He claims, however, that the state was permitted to propound an excessive number of leading questions and that the victim thereafter succumbed to the suggestions made by the state in its questioning.
The victim initially testified twice that defendant had “touched me where I didn’t want to be touched.” Thereafter, the state continued to question the victim to obtain the specifies of her complaint. The following exchange occurred:
Q Okay. And what happened after that? Did he come into the room again?
A I think so.
Q And what happened that next time? Did he come over? He walked into the room, and could you see him?
A Yes, ma’am.
Q And where did he go?
A In my bedroom.
Q He went in your bedroom. And what did he do after he got into the bedroom?
A He — I can’t remember.
Q Did he walk on the ceiling?
A No, ma’am.
Q He didn’t walk on the ceiling?
A No, ma’am.
Q What did he do?
A I can’t remember.
Q You said that he touched you somewhere. Do you remember when that happened?
A When my momma and Mr. Steve went to look at the house.
Q That night, you remember when that happened?
A Yes, ma’am.
Q How did that happen? You said he touched you somewhere. Where were you when he touched you?
[BY DEFENSE COUNSEL:] Excuse me just a minute. I’m sorry. I understand Your Honor, I understand that there’s a certain amount of leading, but she has said the same thing three straight times. He touched you somewhere. He touched you somewhere. He touched you somewhere. Now, I think once is enough. BY THE COURT: Overruled.
LSA-R.S. 15:277 defines leading questions as follows:
A leading question is one which suggests to the witness the answer he is to deliver, and though framed in the alternative, is inadmissible when propounded to one’s own witness, unless such witness be unwilling or hostile.
Herein, the victim had already testified that defendant had touched her; and, thus, there was no suggestion of any fact which had not been proven. See, e.g., State v. Shepherd, 332 So.2d 228 (La.1976). The questions at issue (“How did that happen?” and “Where were you when he touched you?”) do not suggest an answer; therefore, the questions are not leading. See State v. Quincy, 363 So.2d 647, 649 (La.1978).
Even if the questions were leading, defendant has not demonstrated any prejudice. It is well-settled that, in the discipline of his court, the trial judge is given wide discretion in controlling the examination of witnesses. LSA-R.S. 15:275. Unless an abuse of this discretion is shown, a conviction will not be reversed. State v. Murray, 375 So.2d 80 (La.1979). While counsel should not be allowed to mold the testimony of a witness, a verdict should be disturbed only when there is a clear abuse calculated to prejudice the right of the accused. State v. Quincy, 363 So.2d at 649. We find no abuse of discretion herein. This assignment of error lacks merit.
*542 FAILURE TO PROVE VENUE AND DATE OF OFFENSE
In assignment of error number three, defendant contends the trial court erred by denying his “motion to dismiss” based on the state’s failure to prove the venue and date of the offense. Defendant orally moved to dismiss the prosecution at the close of the state’s case, claiming the state failed to prove these essential elements.
We are unaware of any motion of the type sought by defendant. Possibly, defendant intended to file a motion for a directed verdict of acquittal. See LSA-C.Cr.P. art. 778. However, defendant was tried by a jury; therefore, such a motion would have been improper.
In any event, defendant’s claims have no merit. Initially, we note that the victim testified that she resided in Frank-linton, Louisiana; and she further testified that the offense occurred in her home. Accordingly, venue was established sufficiently. See State v. Hayes, 414 So.2d 717 (La.1982).[2] The date and time of the offense are not essential elements unless the crime is contingent upon the date or time. See LSA-C.Cr.P. art. 468, Official Revision Comment (b). See also State v. Case, 357 So.2d 498 (La.1978). The date of the offense is not an essential element of the crime of molestation of a juvenile. Accordingly, we find no error in the court’s refusal to grant defendant’s “motion to dismiss.”
PREJUDICIAL REMARKS
In assignment of error number four, defendant complains of the court's failure to rule on an objection he made during the state’s rebuttal argument. He claims that the comment to which he objected contained an inference by the state that he bore part of the burden of proof, and that the court erred by failing to admonish the jury to ignore the remark.
The remark to which defendant objected occurred in the following context;
[BY DEFENSE COUNSEL:]
Now, the mother of this child stated that she took the child to the doctor a couple of days after this event. That makes you wonder in the first place why wait a couple of days. And second, if the child was examined by a doctor, where is that medical testimony? Where is the doctor who will sit on that witness stand and say, I examined the child, there was evidence of some molestation? I will tell you where it is. It doesn’t exist. Otherwise, you can believe the State would have had that doctor sitting on that stand.
Thereafter, the state responded to defendant’s argument during its rebuttal remarks, as follows:
[BY THE STATE:]
Mr. Ehmig also talks about the doctor, where is the doctor? He has the same power to bring people in to testify as the State. It’s not the State’s responsibility to make sure....
[BY DEFENSE COUNSEL:]
Your Honor, I object to that. It’s not my responsibility to prove. It’s the State’s responsibility to prove. And to refer to it as my having the same right as the State, I’m going to object to it as being incorrect argument.
BY THE COURT:
She didn’t talk about the burden, it was only what could be done.
[BY DEFENSE COUNSEL:]
The doctor, sir—
BY THE COURT:
I don’t think you should continue along that line.
The state then continued its address without further reference to the medical reports.
*543 Defendant claims the state’s rebuttal argument was an attempt to shift the burden of proof to the defense. He further contends that the court’s failure to rule on his objection increased the prejudicial effect of the state’s improper remarks.
Although the better course would have been for the court to specifically overrule defendant’s objection, it is clear from the remarks set forth above that the court implicitly overruled the objection. Certainly, defendant was entitled to request a specific ruling from the court. However, notwithstanding the court’s failure to directly rule on defendant’s objection, the court’s intention was clear; therefore, we find no manner in which defendant might have been prejudiced by the lack of a specific ruling.
Moreover, we find no merit to defendant’s claim that the state’s argument was a prejudicial attempt to shift the burden of proof. In State v. Collins, 362 So.2d 550 (La.1978), the Louisiana Supreme Court noted that whether in a particular trial a party’s failure to call a witness may be used against him is so much a part of the context in which it arises that it is extremely difficult to formulate hard and fast rules which will govern in future cases. State v. Collins, 362 So.2d at 552. However, the Court has also acknowledged that a statutory presumption exists under LSA-R.S. 15:432 that evidence under the control of a party and not produced by him creates a presumption that it was not produced because it would not have aided him; under LSA-C.Cr.P. art. 774, the state is entitled to refer in its closing argument to the lack of evidence and to conclusions of fact drawn therefrom. See State v. Pounds, 359 So.2d 150 (La.1978). To that end, the Court has approved the use of an inference created by the failure to call a witness, even where the party was available to service of process from both sides. See State v. Hamilton, 334 So.2d 383 (La.1976).
Herein, the state did not assert or imply that the defense had a burden to call the examining physician; rather, the state pointed out that the doctor was available to either party. The remarks complained of were in direct response to the argument defendant advanced concerning the failure of the state to present the doctor’s testimony. See State v. Kyles, 513 So.2d 265 (La.1987), cert. den., 486 U.S. 1027, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988). Accordingly, in the instant case, we find the remarks complained of constituted proper rebuttal argument.
In any event, before a reviewing court will reverse on the basis of improper closing argument, it must be thoroughly convinced the remark influenced the jury and contributed to its verdict. State v. Eaton, 524 So.2d 1194 (La.1988), cert. den., — U.S. -, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989). In making this determination, the court gives credit to the good sense and fairmindedness of the jury. State v. Eaton, 524 So.2d at 1208. After the state’s rebuttal argument, the court instructed the jurors that the defendant is presumed innocent until every element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt. The court further instructed the jurors that the burden is upon the state to prove defendant’s guilt beyond a reasonable doubt and that the jurors must accord defendant the benefit of every reasonable doubt arising out of the evidence or the lack of evidence. Finally, the court instructed the jurors that, in closing arguments, the attorneys were permitted to present for the jurors’ consideration their contentions regarding what the evidence had shown and not shown and the conclusions each attorney thought might be drawn from the evidence and that these statements were not to be used as evidence but only for the limited purpose outlined by the court. Therefore, in light of the explicit instructions of the court, we are not convinced that the state’s argument, even if it were improper, contributed to the guilty verdicts. Accordingly, this assignment of error has no merit.
DENIAL OF MOTION FOR NEW TRIAL
By assignment of error number five, defendant submits that the trial court *544 erred by denying his motion for a new trial in which he claimed the jury verdict was contrary to the law and the evidence. He contends that the court’s failure to grant a new trial was error patent on the face of the record because the evidence presented by the state did not support a conviction on both counts of molestation of a juvenile.
In criminal cases, an appellate court may consider only errors designated in an assignment of error and errors “discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.” LSA-C.Cr.P. art. 920. Defendant’s complaint that the court’s failure to grant a new trial based on the lack of evidence was patent error is not correct because the determination of the issue would require an examination of the evidence.
In any event, a review of the trial court’s denial of a motion for a new trial based on an assertion that the verdict is contrary to the law and evidence is limited to the question of whether or not the trial judge has properly exercised his discretion in that regard. State v. Humphrey, 445 So.2d 1155 (La.1984). The trial judge, when called upon to assess the legal merits of a motion for a new trial, is accorded considerable latitude in evaluating the reliability of the evidence and its potential impact on the verdict; his ruling will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. State v. Humphrey, 445 So.2d at 1159-1160.
During the hearing conducted on defendant’s motion for a new trial, the court noted that the jury had considered the evidence and found that the state had proven two separate counts and that it did not find that the verdicts were contrary to the law and evidence. We find the record supports the jury’s conclusion that more than one offense occurred. Therefore, we find no abuse of discretion herein.
EXCESSIVE SENTENCE
In assignment of error number six, defendant complains that the trial court imposed excessive sentences in light of the fact that he had no prior record of criminal offenses. He contends that he should have received a suspended sentence with a requirement for psychiatric treatment. He further claims that the reasons set forth by the trial court indicate that the court intended to inflict as much pain and suffering upon him as would be statutorily permitted.
In imposing the sentence, the trial court specifically referred to the pre-sentence investigation report and to the sentencing criteria of LSA-C.Cr.P. art. 894.1. The pre-sentence investigation report indicates that, within three months of his arrest on this charge, defendant was arrested in a neighboring parish for another charge of molestation of a juvenile; that charge was still pending at the time the report was prepared. The report further noted that the victim has experienced anti-social behavior and disturbed sleep since the incident.
The court noted the psychological harm suffered by the victim and that defendant must have contemplated that his action could have this effect. It further found that defendant acted under no strong provocation by the victim, that no substantial grounds existed which tended to excuse or justify his conduct, and that the victim neither induced nor facilitated the commission of the crimes.
Although defendant claims that his review of similar convictions in the 22nd Judicial District indicates that, as a first offender, he should have received a suspended sentence conditioned upon incarceration in the parish jail and psychiatric treatment, we are not persuaded that this comparison is valid. Initially, we note that, despite his status as a first felony offender, defendant was arrested for a similar offense a very short time after his arrest on the instant charges; the court was entitled to consider this arrest in imposing sentence. See State v. Grimes, 527 So.2d 1079 (La.App. 1st Cir.), writ denied, 533 So.2d 15 (La.1988). Thus, defendant’s conduct is not readily comparable to other convictions for the same offense within the *545 judicial district. In so finding, we express no opinion on the validity of the statistics presented to this Court.
Therefore, the court’s assessment that defendant is in need of a correctional custodial environment that could be provided only by the Department of Corrections appears to be wellfounded. We find no support for defendant’s claim that the sentence of the court was designed to inflict the maximum amount of pain that could be statutorily supported. The trial court specifically found that the victim was under defendant’s supervision and imposed sentence accordingly. That determination is amply supported by the record. The trial court has wide discretion in the imposition of sentences, and a sentence within statutory guidelines will not be set aside in the absence of an abuse of that discretion. State v. Wardlow, 448 So.2d 257 (La.App. 1st Cir.1984). We find no abuse of discretion herein.
Considering the foregoing, the convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.

. Defendant does not claim that the trial court’s ruling prevented him from impeaching the credibility of the victim’s mother. Clearly, impeachment by presenting evidence of a witness’s prior inconsistent statement is permissible; we are aware that defendant’s question might have been construed as an attempt to call the witness’s attention to the prior statement, as required by LSA-R.S. 15:493. However, we note that defendant has never claimed that he sought to impeach the victim’s mother through use of her statement, nor has he claimed that a contra *541 dictory statement exists. Accordingly, we do not consider the possible relevancy of the statement for its impeachment value.

. We note that LSA-C.Cr.P. art. 615 was amended in 1988 to read as follows:
Art. 615. Improper venue; pleading
Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.