570 So.2d 227 (1990)
STATE of Louisiana
v.
Willie JACKSON.
No. 90-KA-342.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1990.
Alan Green, Asst. Dist. Atty., Gretna, for plaintiff, appellee.
*228 Martin E. Regan, Jr., New Orleans, for defendant, appellant.
Before BOWES, GAUDIN and GOTHARD, JJ.
GOTHARD, Judge.
On February 5, 1987 Willie Jackson was charged by grand jury indictment with the aggravated rape and armed robbery of Beverly S. He appeared before Judge Joseph Tiemann on April 14, 1987 and entered a plea of not guilty. Numerous pretrial motions were ultimately heard on July 31, 1989. On August 26, 1989, following a five-day trial, the jury returned verdicts of guilty of attempted aggravated rape and guilty of first degree robbery.
A motion for new trial was denied on October 17 and on the following day Jackson was sentenced to serve thirty years at hard labor as a result of the attempted aggravated rape conviction and ten years for the first degree robbery. The sentences were ordered served consecutively and without benefit of parole, probation, or suspension.
From the convictions and sentences the defendant now appeals, urging two assignments of error.

FACTS
Early in the evening on December 12, 1986 Beverly S. stopped at Smitty's Lounge on the West Bank to drop off some raffle tickets for the owner, Smitty, to sell. While Smitty wasn't there, his son, Kevin, was. The victim had a drink and spoke with Kevin for a while waiting for Smitty to return. During the conversation the victim indicated that she was on her way to Belle Promenade and would stop back later. Kevin asked her to pick up some concert tickets for him and she agreed. She returned to the bar several hours later and stayed until early on the 13th. Shortly before she left she told a friend at the bar that she was going home but would stop at the Omelette Shoppe to pick up a breakfast to heat up later for her son.
When she arrived at the Omelette Shoppe she exited her car from the passenger side since an accident had left the driver's door inoperable from the inside. As she stepped out a scrap of paper fell to the ground. Believing it to be something which had come from her purse she picked it up and shoved it in her pocket so she could examine it later. At that moment she felt an object in her back and a hand grasping her shoulder. She was told to walk to a nearby car. She complied. When she reached the driver's side her abductor opened the door, struck her with the object in his hand, and, as she fell, shoved her into his car. The two struggled for a short time but despite the fact that the victim blew the horn and kicked on the windows no one came to her assistance. During the struggle the abductor stripped off most of the victim's clothes. He then dragged her into the back seat and began biting her. He removed his shorts and performed cunnilingus. He attempted to rape her vaginally but was unable to do so because she was struggling so violently. He forced the victim to turn over and holding her down raped her anally. Following the rape, the perpetrator dressed, leaving the victim naked on the floor of the back seat. He grabbed her purse and went through it, taking what money he found, approximately $14.00. Telling her that he was taking her to a place where people "didn't give a damn about a nigger," he began driving. When they neared the overpass at the West Bank Expressway he threw her clothes onto the back seat and told her to get dressed. After driving a while he brought her to a neighborhood where he told her he would have sex with her again and no one would intervene when they saw she was black. He ordered her out of the car and got out himself. As soon as she exited the automobile, she began screaming and fighting. When a man from the neighborhood who was out walking came over to assist her, the perpetrator got into his car and backed off, presumably to prevent the rescuer's seeing the license plate.
The defendant became a suspect when the note, apparently written by the perpetrator, was found in the victim's pocket. It was written on the back of a deposit slip *229 and the account number was one belonging to the defendant and his mother. Jackson was identified by the victim as the perpetrator in both a photo and a physical lineup. In addition, at trial, the state's expert testified that the defendant's dental patterns matched the bite marks left on the victim. Beverly S. identified the perpetrator's automobile as well as various personal items belonging to her that were found in the car and in Jackson's mother's house. No weapon was found.
The defendant produced alibi witnesses who testified that he was in Natchez, Mississippi at the time of the offense.
Assignment of error number one: whether the trial court erred in prohibiting the defendant from conducting an evidentiary hearing on his motion for new trial and thereafter denying said motion.
The pertinent portions of Appellant's Motion for New Trial are excerpted, as follows:
I.
The following witnesses, and more particularly, the information they could have given under oath at the trial of the above captioned case were not discovered before or during the trial.
A. Milton Jackson, the brother of the defendant, would testify that he was with the victim on the night in question and it was he who had borrowed his parents' vehicle, described by the victim as being the vehicle in which she was raped. He would further testify that the note the victim turned over to the authorities was written by him and that he was the person that bit the victim. He is currently available and is waiting to testify.
B. Kevin D. Smith would testify that he witnessed Milton Jackson in the company of the victim on the night in question and was the individual the victim met and danced with at the lounge prior to the incident that raised the charges against WILLIE JACKSON. He would further testify that he heard Milton Jackson confess to being with the victim on the evening of the day in question.
C. Christopher E. Ceasar would testify that he saw Milton Jackson in the company of the victim on the evening in question. He would further state that it was not WILLIE JACKSON in the lounge as described by the victim, but rather his brother, Milton Jackson.
II.
A handwriting expert will be called by the defendant to corroborate Milton Jackson's testimony that it was he who wrote the note that the victim turned over to police.
III.
A dental expert will be called by the defense to testify that the bite marks in question on the victim's body match identically with Milton Jackson's dental pattern.
IV.
A fingerprint expert will be called by the defense to testify that Milton Jackson's fingerprints are on the note in question which was turned over to the authorities by the victim.
For the aforementioned reasons, the verdict finding WILLIE JACKSON guilty would result in an injustice if permitted to stand. It is therefore respectfully submitted that the ends of justice would be best served by granting the defendant, WILLIE JACKSON a new trial.
La.C.Cr.art. 851 governs the granting of a new trial and provides, in pertinent part that:
The court, on motion of the defendant, shall grant a new trial whenever:
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial *230 it would probably have changed the verdict or judgment of guilty;
. . . . .
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
The Supreme Court in State v. Prudholm, 446 So.2d 729 (La.1984) interpreted the statute as follows, at 735:
... This rule contains the four generally recognized requisites for the motion for a new trial based on newly discovered evidence: (1) the evidence must have been discovered since the trial; (2) failure to learn of the evidence at the time of trial was not due to defendant's lack of diligence; (3) it must be material to the issues at the trial; (4) it must be of such a nature that it would probably produce an acquittal in the event of retrial. State v. Talbot, 408 So.2d 861, 884 (La.1981) (on rehearing); Moore, 8A Federal Practice § 33.03[1] at pp. 33-18 and 33-19 (2d ed. 1983); Wright, 3 Federal Practice and Procedure: Criminal § 557, p. 315 (2d ed. 1982).
The application of these precepts to newly discovered evidence by the trial judge, although a question of law, is entitled to great weight, and his discretion should not be disturbed on review if a reasonable man could differ as to the propriety of the trial court's action. See, e.g., State v. Talbot, supra, at 885; State v. Jackson, 253 La. 205, 217 So.2d 372 (1968); State v. Truax, 222 La. 463, 62 So.2d 643 (1952). On the other hand, the discretion vested in the trial court must be exercised in whole-hearted good faith and be guided by the statutes, not by the court's private opinion of what the statute ought to be. State v. Talbot, supra, at 885; State v. Gilmore, 332 So.2d 789 (La.1976); State v. Randolph, 275 So.2d 174 (La.1973). The trial judge's duty is not to weigh the new evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury's judgment.
In the present case it is difficult to imagine that the evidence alleged to be newly discovered was not available to defense counsel prior to trial. Trial counsel called both the defendant's mother and sister to the stand; either or both could have implicated the defendant's brother by noting the resemblance between the two, the fact that only Milton had been in the service, since the perpetrator had made such a reference during the commission of the offense, and/or that it had been Milton who used the car on the evening of the defense. As more than two years elapsed between Jackson's arrest and trial, it is hardly believable that if his brother was willing to admit to the crime he would not have come forward earlier.
With regard to the expert witnesses the defense alleges it would call, these also could have been available at the time of trial. The defense counsel in this case conducted "open file" discovery and had detailed knowledge of the evidence which would be introduced by the State at trial. The record reflects that at the time of the suppression hearing the defense counsel indicated that he intended to call a forensic odontologist at trial to rebut the findings of the State's expert. For that reason, we consider it likely that the decision not to call the odontologist was a tactical one. As to the handwriting expert who would testify that the defendant's brother wrote the note found by the victim, the various members of the defendant's family each denied at trial that the note was in the defendant's handwriting. Since the existence of the note was known and the note was available to the defense for examination, the fact that an expert has now become available to testify that the note was not written by the defendant cannot be deemed "newly discovered" evidence. Also, even if the defendant's brother's fingerprints were once on the note, it would be useless for a fingerprint expert to examine it now, after numerous persons have handled it.
In addition to believing that the newly offered evidence was not newly discovered, *231 the trial judge was also of the opinion that it was suspect. The trial court has the discretion to grant or deny a new trial on the ground of newly discovered evidence which is suspicious or incredible. State v. Lee, 469 So.2d 258 (La.App. 4th Cir.1985).
The defendant asserts that the "ends of justice" would be served if a new trial were granted, under La.C.Cr.P. art. 851(5). The granting of a new trial under that provision lies solely with the discretion of the trial judge and presents nothing for review by an appellate court. State v. Green, 469 So.2d 1161 (La.App. 5th Cir.1985); State v. Marler, 560 So.2d 537 (La.App. 1st Cir. 1990).
The appellant also argues that the trial judge erred in not granting an evidentiary hearing on the motion. The motion for new trial was submitted in the affidavit of defendant's counsel. Oral arguments of both sides were allowed at the court's hearing.
C.Cr.P. art. 852 provides that the motion "shall be tried contradictorily with the district attorney;" however, historically the method of hearing motions for new trial has been left to the trial judge's discretion. In State v. Varnado, 154 La. 575, 97 So. 865, 868 (1923) the Supreme Court held that:
"... If the reading of the motion imparts to him sufficient knowledge to enable him to intelligently dispose of the matter, he cannot be arbitrarily required to delay his ruling for the purpose of further hearing or argument. The accused is not entitled to compulsory process to obtain witnesses in support of his motion for a new trial, and the examination of witnesses to prove newly discovered evidence is within the discretion of the trial judge...."
In State v. Barfield, 292 So.2d 580, 582 (La.1974), the Supreme Court found no error when the trial court disposed of the motion for new trial on the basis of the affidavits submitted with the motion. The court observed that "[a]n evidentiary hearing was not necessary and would have been merely repetitious because of the affidavit."
In the present case, the trial judge determined that the proffered evidence was suspect, because it should have been discovered prior to or during trial but was not, despite the availability of witnesses and the two and one-half year delay in bringing the case to trial. We find no error in the trial court's choosing not to conduct an evidentiary hearing and in denying the motion for new trial.

Error Patent Discussion
La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignment of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
The commitment states that the defendant was sentenced to imprisonment at hard labor for thirty years on count number one, R.S. 14:27, 14:42, attempted aggravated rape and for ten years on count number two, R.S. 14:64.1, first degree robbery. It then reads:
The court ordered the defendant be given credit for time served. The court ordered this sentence without benefit of parole, probation or suspension of sentence.
The sentence for count number one is legally excessive because it is to be served without benefit of parole, probation, or suspension of sentence. Although the sentence for aggravated rape, R.S. 14:42, is "life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence," R.S. 14:27 D, which sets out the penalties for attempted committing of crimes is silent on that provision. The jurisprudence has therefore interpreted the statute as "allowing probation, parole, or suspension of sentence since it does not indicate ineligibility for such." See also State v. See, 467 So.2d 525 (La.1985); State v. Diggs, 423 So.2d 643 (La.1982).
Accordingly, we remand to the trial court for the specific purpose of correcting the sentence insofar as it pertains to count *232 number one, R.S. 14:27, 14:42, attempted aggravated rape.
For the reasons assigned above, the conviction is affirmed. The sentence for count number two, R.S. 14:64.1, first degree robbery is affirmed. The sentence for count number one, R.S. 14:27, 14:42, attempted aggravated rape, is affirmed as to time to be served, but the case is remanded for correction of that sentence insofar as it provides for the unavailability of probation, parole, or suspension of sentence.
CONVICTION AFFIRMED, CASE REMANDED FOR CORRECTION OF SENTENCE.