768 So.2d 201 (2000)
STATE of Louisiana
v.
Nacaro L. DAVIS (sentenced as "Nacaro Davis").
No. 00-KA-278.
Court of Appeal of Louisiana, Fifth Circuit.
August 29, 2000.
*204 J. Rodney Baum, Louisiana Appellate Project, Baton Rouge, Louisiana, Counsel for Nacaro Davis, Appellant.
Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Frank Brindisi, Assistant District Attorneys, Gretna, Louisiana, Counsel for State of Louisiana, Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
*205 CHEHARDY, Judge.
Nacaro Davis appeals his conviction of one count of possession with intent to distribute cocaine. We affirm.
On November 21, 1997, the Jefferson Parish District Attorney filed a bill of information charging Nacaro L. Davis and Rogers Williams with one count of violation of La. R.S. 40:967(A), possession with intent to distribute cocaine.[1] At arraignment on December 5, 1997 Davis entered a plea of not guilty.
On April 2, 1998 counsel for Davis filed an omnibus motion that included a motion to suppress confession, evidence and identification, a motion for discovery and inspection and for exculpatory evidence, and a motion in limine.
On May 19, 1998, a twelve-member jury was selected for trial of defendant without his co-defendant.[2] On May 20, 1998, the trial court took up defendant's motion to suppress, out of the presence of the jury, and after a hearing denied the motion to suppress. Trial then commenced, continuing to May 21, 1998 and concluding on May 22. The jury found defendant guilty as charged.
Defendant filed a motion for new trial, which was heard and denied on May 26, 1998. On June 1, 1998, the Jefferson Parish District Attorney filed a multiple offender bill of information alleging that defendant was a second felony offender. On that same date defendant re-urged his motion for new trial, citing newly-discovered evidencespecifically, that his co-defendant, Roger Williams, would recant his trial testimony that the contraband found in his bedroom was not his. Before Williams could testify, however, his attorney stated that his client had decided to invoke his Fifth Amendment privilege against self-incrimination.
The court denied defendant's re-urged motion for new trial and sentenced defendant to imprisonment at hard labor for a term of 20 years. During the same hearing, defendant admitted to the allegations contained in the multiple offender bill of information. The trial court vacated defendant's previous sentence and sentenced defendant to a term of imprisonment of 25 years, to be served without benefit of parole, probation, or suspension of sentence.
Defendant moved orally for appeal, supplemented by a written motion for appeal on June 3, 1998. The motion for appeal was granted by the trial court on the same date. After the record was lodged in this Court on November 5, 1999, defendant's trial counsel filed another motion for new trial, again based on newly-discovered evidence Roger Williams' recantation of his trial testimony, this time supported by his affidavit. (By that time Williams had been convicted and was serving his sentence.) This Court remanded the appeal to incorporate the disposition of this third motion for new trial. State v. Nacaro L. Davis, 99-1214 (La.App. 5 Cir. 12/2/99) (unpublished order). The trial court denied the motion on December 14, 1999, without granting a hearing or assigning reasons. The appeal was re-lodged under No. 00-KA-278 on March 9, 2000 and we now consider its merits.

*206 FACTS
At trial the State presented the testimony of Deputy Dominick Imbornone of the Jefferson Parish Sheriff's Office. Imbornone testified that on October 12, 1997, he was assigned to the Eastbank Street Crimes Unit and his partner was Donald Clogher. At approximately 2:00 a.m. on that date, Imbornone and his partner set up a surveillance on 309 North Elm from a point of concealment.
From that point of concealment, Imbornone saw defendant and Roger Williams standing in front of 309 North Elm. As Imbornone and his partner were watching, an unknown black male approached defendant and Williams. The three men huddled, then defendant walked to the rear of the complex at 309 North Elm. Defendant returned to the front of the complex and conducted a hand-to-hand transaction with the unknown male. The unknown male then left the area.
Imbornone then witnessed a second male approach defendant and Williams. Defendant again went to the rear of the complex and returned to conduct a hand-to-hand transaction.
After seeing the second transaction, Imbornone and his partner moved in to where defendant and Williams were. As Imbornone and his partner approached, two black males approached defendant and Williams. At this time, an unmarked police car drove down North Elm. Imbornone testified that the two unknown males alerted defendant and Williams to the presence of the unmarked police car.
After being alerted, defendant and Williams began to leave the area. Defendant placed an unknown object on the ground near an apartment door. Deputy Clogher retrieved the object, which was a brown bag containing what appeared to be crack cocaine. Defendant and Williams then entered an apartment. Imbornone and Clogher followed defendant and Williams into the apartment. Inside the apartment, defendant was attempting to place a large clear plastic bag which contained three smaller bags into a dresser. Imbornone restrained defendant.
The State also called Deputy Clogher. He testified that on October 12, 1997, he was involved in the surveillance of 309 North Elm Street. He observed two men outside the apartment complex. As he watched, defendant conducted a hand-to-hand drug transaction. After this transaction, defendant went to the rear of the complex and returned with Williams. Later, Clogher observed defendant conduct a second hand-to-hand transaction.
After observing the second transaction, Clogher and his partner moved in to the area where defendant was. As they moved in, Clogher and his partner advised a police car to come into the area. Two other subjects then joined defendant and Williams in front of the complex. These two men saw the police unit and alerted defendant and Williams.
Williams and defendant moved to the rear of the complex, defendant placed the paper bag on the ground and entered an apartment. Clogher picked up the bag and saw what appeared to be crack cocaine inside. Clogher then followed his partner into the apartment which defendant and Williams had entered. Once in the apartment Clogher grabbed Williams as he reached for a handgun. The handgun was seized along with razor blades and a plate which appeared to have powdery residue on it, an electronic scale, two other guns and an assault rifle.
The State called Thomas Angelica, who qualified as an expert in the testing and analysis of controlled dangerous substances. He testified that he tested evidence assigned item number J11147-97, which consisted of two exhibits. During his testimony, it was stipulated that one exhibit tested positive for cocaine and the second did not.
The State also called Bruce Harrison of the Jefferson Parish Sheriffs Office. He *207 testified about how the drug trade is conducted.
The defense called Alfred Wilson. He testified that he was arrested in front of 309 North Elm along with defendant. He testified that the officers stopped them and made them empty their pockets. He further testified that while they were stopped an officer entered an apartment using a set of keys.
Defendant also called Pecola Davis who testified she lived at 309 North Elm Street with her grandson, Rogers Williams. On the night of the incident she was at home. At one point, she came out of her bathroom and there were police officers in the apartment. She testified that she did not give the officers permission to enter her apartment. She further testified that neither defendant nor Williams were in the apartment when she came out of the bathroom to discover the officers in her house.
Rogers Williams also testified. He stated that on October 12, "we were outside on front of our steps" in front of 309 North Elm when three policeman pulled up and "put us on the wall [and] checked us." According to Williams, "[W]hen they couldn't find anything they said put a rock on all of them." He specified the officer who made the statement was an Officer Robinson. He testified further that the officers took his apartment key from his pocket and opened his apartment door, but that he did not give the officers permission to enter the apartment. He testified that the items seized did not belong to defendant. On cross-examination Williams denied that he owned the seized items.
Defendant also testified. Defendant stated that he did not live at 309 North Elm. He denied selling cocaine at 309 North Elm. He testified that on October 12 he was outside 309 North Elm when police officers arrived. The officers put him and three other men up against the wall and began to search them. Defendant also said that officer Robinson said, "Put a rock on all of them." He stated that the officers took Williams' key out of his pocket, opened the apartment door and went inside. Defendant denied knowing that the seized items were inside the house.
ASSIGNMENT OF ERROR NUMBER ONE
The Trial Court Erred When it Denied Defendant's Second Motion for New Trial Based on Newly Discovered Evidence:
-Trial Court Abused its Discretion by Simply Writing "Denied" Across the Face of the Motion Without Holding a Hearing or Issuing Written or Oral Reasons for the Denial.
-The Trial Court Abused its Discretion Because the Motion Was Meritorious.
Defendant argues that the trial court erred and he should be granted a new trial because the trial court failed to hold a hearing or give reasons for the denial of his motion for new trial and because the trial court abused its discretion in denying his motion for new trial. The State responds that the trial court was not required to hold a hearing on the motion for new trial or give written reasons and that the motion for new trial was properly denied. Each of defendant's arguments is discussed separately.

A. The Trial Court Abused its Discretion by Simply Writing "Denied" Across the Face of the Motion Without Holding a Hearing or Issuing Written or Oral Reasons for the Denial.
Defendant argues that the trial court's failure to hold a hearing was error. Defendant points to La.C.Cr.P. art. 851, which sets out the grounds for new trial and provides for new trials based on newly discovered evidence as follows:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is *208 shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
* * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty....
Defendant also points to the standards of review of a trial court's decision on a new trial motion set out in State v. Prudholm, 446 So.2d 729 (La.1984). Based on this article and Prudholm, defendant argues that failure to hold a hearing was error.
However, defendant fails to cite to La. C.Cr.P. art. 852, which applies in the present case. Art. 852 provides, "A motion for a new trial shall be in writing, shall state the grounds upon which it is based, and shall be tried contradictorily with the district attorney."
Although art. 852 requires contradictory trial of motions for new trial, "historically the method of hearing motions for new trial has been left to the trial judge's discretion." State v. Jackson, 570 So.2d 227, 231 (La.App. 5 Cir.1990).
The method of hearing motions for new trial is left to the discretion of the judge. If the reading of the motion imparts to him sufficient knowledge to enable him to intelligently dispose of the matter, he cannot be arbitrarily required to delay his ruling for the purpose of further hearing or argument. The accused is not entitled to compulsory process to obtain witnesses in support of his motion for a new trial, and the examination of witnesses to prove newly-discovered evidence is within the discretion of the trial judge.
State v. Varnado, 154 La. 575, 97 So. 865, 868 (1923).
In State v. Barfield, 292 So.2d 580 (La. 1974), the Supreme Court found no error when the trial court disposed of the motion for new trial on the basis of the affidavits submitted with the motion. The court observed, "An evidentiary hearing was not necessary and would have been merely repetitious because of the affidavit." 292 So.2d at 582.
In Jackson the trial judge determined that the proffered evidence was suspect, because it should have been discovered prior to or during trial but was not, despite the availability of witnesses and the two and one-half year delay in bringing the case to trial. 570 So.2d at 231. We found no error in the trial court's choosing not to conduct an evidentiary hearing and to deny the motion for new trial.
In the present case, there was significant argument on the issue of Williams' recanting and of this testimony serving as the basis for a new trial motion during the hearing on defendant's oral new trial motion. During this hearing, Williams took the stand but asserted his Fifth Amendment privilege. The affidavit attached to the new trial motion sets out the testimony that defendant attempted to produce in the earlier hearing.
Because the trial court previously heard argument concerning this new trial motion and the affidavit fully set out Williams' testimony, we find that the trial court did not err in refusing to hold a hearing on defendant's third new trial motion.

B. Trial Court Abused its Discretion Because the Motion Was Meritorious.
Defendant argues that the trial court erred in denying his motion for new trial based on newly discovered evidence. Defendant's motion for new trial was based on an affidavit of Rogers Williams, who testified at trial. At trial Williams denied owning the cocaine, drug paraphernalia, *209 and weapons seized at 309 North Elm Street. In his affidavit, Williams recants his testimony and admits that the items seized belonged to him. He further states in the affidavit that defendant is innocent of the charges.
La.C.Cr.P. art. 851(3), quoted in the previous section of this opinion, contains four generally recognized requisites for a new trial motion based on newly discovered evidence: (1) the evidence must have been discovered since the trial; (2) failure to learn of the evidence at the time of trial must not be due to defendant's lack of diligence; (3) it must be material to the issues at the trial; and (4) it must be of such a nature that it would probably produce an acquittal in the event of retrial. State v. Prudholm, 446 So.2d 729, 735 (La.1984); State v. Talbot, 408 So.2d 861, 884 (La.1980); State v. Myers, 584 So.2d 242, 254 (La.App. 5 Cir.1991), writ denied, 588 So.2d 105 (La.1991), cert. denied, 504 U.S. 912, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992).
"The application of these precepts to newly discovered evidence by the trial judge, although a question of law, is entitled to great weight, and his discretion should not be disturbed on review if a reasonable man could differ as to the propriety of the trial court's action." State v. Prudholm, supra. The trial judge is afforded considerable discretion in evaluating the impact of newly discovered evidence, and his denial of a motion for a new trial will not be disturbed on appeal absent a clear abuse of that discretion. State v. Clayton, 427 So.2d 827, 832 (La.1982). Where the exercise of discretion is arbitrary and not judicial, and the judgment is unjust, it will be set aside. State v. Talbot, supra, at 885; State v. Myers, supra, at 254.
Recantations are highly suspicious and except in rare circumstances a motion for new trial should not be granted on the basis of a recantation since the disclaimer is tantamount to admission of perjury so as to discredit the witness at a later trial. State v. Prudholm, 446 So.2d at 736; see also, State v. Clayton, 427 So.2d at 832-833; State v. Smith, 520 So.2d 1252, 1254 (La.App. 5 Cir.1988), writ denied, 523 So.2d 1320 (1988).
In the present case, Williams seeks to recant his trial testimony and claim sole responsibility for the cocaine and other items seized. At the time he testified at trial that the contraband found in his bedroom was not his, the charge was still pending against him. When his affidavit of recantation was made, however, he was serving a sentence of seven years pursuant to a plea agreement. Williams' recantation of his trial testimony would have the same effect on his credibility as we discussed in Smith. We find, therefore, that the trial court did not err in denying defendant's motion for new trial based on the recanted testimony.
Further, the trial court must grant a new trial only if the evidence would probably have changed the verdict had it been introduced at trial. La.C.Cr.P. art. 851(3); State v. Burrell, 561 So.2d 692, 707 (La. 1990), cert. denied, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861 (1991).
In the present case, there was direct testimony that defendant was in possession of the cocaine. Given this direct testimony, it is unlikely that Williams' recanted testimony claiming the cocaine would change the verdict. Accordingly, we find no merit to this assignment.
ASSIGNMENT OF ERROR NUMBER TWO
The Trial Court Erred in Denying Defendant's Request for a Special Jury Charge Regarding the Law of "Mere Presence."
Defendant argues that the trial court erred by rejecting his proposed jury charge concerning mere presence. The State responds that the requested charge was not necessary because it was substantively *210 included in the trial court's general jury charge.
La.C.Cr.P. art. 807, which governs special jury charges, states:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
When a special jury charge is not reduced to writing for presentation to the court, a trial judge may properly refuse to give such a charge. State v. Leeming, 612 So.2d 308, 315 (La.App. 5 Cir.1992), writ denied, 616 So.2d 681 (La.1993), citing State v. Weems, 358 So.2d 285, 289 (La. 1978).
In the present case, there were two instances where defendant's proposed jury charge was discussed. During a discussion of the proposed jury charges the following exchange took place:
MR. REGAN (defense counsel):
Well, the mere presence rule, merely being present at the scene of a crime is not sufficient evidence. I've got my secretary faxing a copy over.
THE COURT:
Okay. You're going to try to submit some since you 
MR. REGAN:
Yes, sir.
Before the jury was taken to the jury room to deliberate, the following exchange took place out of the hearing of the jury:
MR. REGAN:
I want to make a record. We gave you the written instruction on mere presence with all the legal citations.
THE COURT:
And I denied it.
MR. REGAN:
And you denied it?
THE COURT:
Yeah.
MR. REGAN:
Well, we note an objection and we move for mistrial.
THE COURT:
Okay.
MR. REGAN:
Absolutely. Is there an-was there an objection by the State or the Court is just doing it on its own?
THE COURT:
I did it with-I thought you were here, but I know Davidson was here.
MR. ODINET (the State):
Davidson was here. We objected to it.
THE COURT:
And I noted the objection.
MR. REGAN:
I just need to know for the record. The State-is the State doing this or is the 
THE COURT:
I have no idea whether the State agrees or not agrees.
MR. ODINET:
We objected yesterday.
MR. REGAN:
It should be reversible error. Note my objection.
THE COURT:
Denied.
The proposed jury instruction on mere presence was never introduced into evidence but a copy of the proposed instruction is found in the evidence folder.
A special charge need not be given if is included in the general charge. La. C.Cr.P. art. 807; State v. Durham, 94-1036 (La.App. 5 Cir. 4/16/96), 673 So.2d 1103, 1122; State v. Giles, 93-0103 (La. App. 4 Cir. 6/15/94), 639 So.2d 323, 328, writs denied, 94-1891 (La.12/19/94), 648 *211 So.2d 399 and 94-1897 (La.12/19/94), 648 So.2d 400.
In the present case, the requested special jury charge states:
Mere presence of the defendant, NACARRO DAVIS, in the area where narcotics are found, or the mere fact that the defendant may have known the person in actual possession, is insufficient to prove constructive possession on the part of NACARRO DAVIS.
The general jury charge in this case stated, in pertinent part:
Constructive possession connotes control of the thing. A person may be in constructive possession of a thing even though not in physical possession, if the thing is subject to his domination and control.
Joint possession connotes a thing which is in the physical custody of another if he willfully and knowingly shares with the other the right to control it.
It is not necessary for the state to show that the defendant was in actual possession of the thing. The state must show either actual, constructive or joint possession.
In our view, the language of the general jury charge concerning possession sufficiently covers the meaning of the requested special jury charge on mere presence.
Even assuming that the general jury charge was not sufficient, however, the failure to read the special charge is not necessarily reversible. Failure to read a special jury charge constitutes reversible error only when there is prejudice to the substantial rights of the defendant or the violation of some constitutional or statutory right. State v. Patterson, 99-994 (La. App. 5 Cir. 1/25/00), 752 So.2d 280; State v. Bailey, 97-493 (La.App. 5 Cir. 11/12/97), 703 So.2d 1325, 1330.
Given the testimony of the police officer that defendant was in actual possession of the cocaine, we find that any failure to give the requested special jury charge did not prejudice the defendant.
Further, this court has held that where defense counsel brings the matter to the jury's attention in closing argument, the trial court does not err in refusing to give a requested special jury charge. State v. Jackson, 527 So.2d 1039 at 1043 (La.App. 5 Cir.1988), citing State v. Collins, 362 So.2d 550 (La.1978).
During closing argument in the present case, defense counsel made the following statement:
The facts are that this means merely being present where cocaine is found in the house or in someone else's car does not make you responsible for that. The fact that they find scales and drugs in somebody's house and you're merely present in the scene, in the area, does not make you responsible. That is not enough.
Given that defendant was able to present his argument about mere presence to the jury, there is no showing that defendant was prejudiced by the trial court's failure to give the requested special jury charge.
ASSIGNMENT OF ERROR NUMBER THREE
The Trial Court Erred in Ruling That Police Responding to the Sight of "Hand to Hand Transactions" May Enter a Private Dwelling and Conduct a Search Pursuant to the "Hot Pursuit" Exception to the Warrant Requirement[.]
Defendant argues that the trial court erred in denying his motion to suppress because the seizure was made without a warrant and without a valid exception to the warrant requirement. The State responds that the seizure was valid because of the exigent circumstances that surrounded the seizure.
The Fourth Amendment of the United States Constitution and Article I, *212 § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). A search or seizure conducted without a warrant issued upon probable cause is per se unreasonable, unless justified by a specific exception to the warrant requirement. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); State v. Moreno, 619 So.2d 62, 65 (La.1993). When the constitutionality of a warrantless search or seizure is at issue on a motion to suppress, the State bears the burden of proving that the search or seizure, was justified under one of the exceptions to the warrant requirement. State v. Diaz-Rubio, 615 So.2d 1124, 1127 (La.App. 5 Cir. 1993), writ denied, 93-1010 (La.9/30/94), 642 So.2d 866.
Police entry into a residence in "hot pursuit" and under "exigent circumstances" are exceptions to the warrant rule. United States v. Santana, 427 U.S. 38 at 42, 96 S.Ct. 2406 at 2409, 49 L.Ed.2d 300 (1976); Warden v. Hayden, 387 U.S. 294 at 298, 87 S.Ct. 1642 at 1645, 18 L.Ed.2d 782 (1967); State v. Hathaway, 411 So.2d 1074, 1078 (La.1982). However, the police must also have probable cause, in order to justify the entry. Id.
In the present case, the State contends that the seizure of the cocaine was justified by the officer's reasonable suspicion that ripened into probable cause. An investigatory stop, authorized by La. C.Cr.P. art. 215.1 and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), must be supported by reasonable suspicion of criminal activity. Reasonable suspicion is something less than probable cause to arrest. Rather, it requires that officers have sufficient knowledge of the facts and circumstances to justify an infringement of an individual's right to be free of government interference. State v. Belton, supra. In making a brief investigatory stop on less than probable cause to arrest, the police must have a particularized and objective basis for suspecting the particular individual who has been stopped of criminal activity. State v. Huntley, 97-965 (La.3/13/98), 708 So.2d 1048, 1049.
The reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer that might elude an untrained person. State v. Huntley, supra. Additionally, in determining whether the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence produced at the hearing on the motion to suppress, but may also consider pertinent evidence given at the trial. State v. Tart, 93-0772 (La.2/9/96), 672 So.2d 116, 127, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996).
An officer's experience and knowledge of recent criminal patterns and the knowledge of an area's frequent incidence of crimes, are factors that may support reasonable suspicion for an investigatory stop. State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 102.
The reputation of a neighborhood as a high-crime area is also an articulable fact upon which an officer may legitimately rely in making a determination as to reasonable suspicion for an investigatory stop. State v. Ayche, 98-191 (La.App. 5 Cir. 7/28/98), 717 So.2d 1218, 1222, writ denied, 98-2853 (La.2/26/99), 738 So.2d 1061.
An officer may make a warrantless arrest when the officer has probable cause to believe that the person to be arrested has committed an offense. La. C.Cr.P. art. 213; State v. Moreno, supra, 619 So.2d at 66. Probable cause exists when the facts and circumstances known to the arresting officer, based on reasonably trustworthy information, are sufficient to justify a belief in a man of ordinary caution that the person to be arrested has committed a crime. Probable cause must be judged by the probabilities and practical considerations of everyday life on *213 which average people, and particularly average police officers, can be expected to act. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, 1184; State v. Williams, supra, 735 So.2d at 72.
Furtive actions and flight at the approach of law officers may be proper factors in the decision to make an arrest if coupled with specific knowledge on the part of the officers relating the suspect to the evidence of crime. State v. Davis, 407 So.2d 666, 669 (La.1981). Recently, in Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673 at 676, 145 L.Ed.2d 570 (2000), the United States Supreme Court observed that "[h]eadlong flight-wherever it occursis the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."
Flight alone is not sufficient to justify an arrest. Even where flight reasonably appears designed to avoid apprehension, probable cause does not arise unless it is combined with other information upon which officers are entitled to rely which would indicate to a reasonable mind that the combination of circumstances is inconsistent with any innocent pursuit. State v. Talbert, 449 So.2d 446, 447 (La. 1984).
Probable cause alone does not justify the entry into a residence, however. State v. Hathaway, supra, at 1079.
Exigent circumstances are exceptional circumstances, which when combined with probable cause, justify entry into an area that without those circumstances, would be illegal. State v. Hathaway, supra, at 1079. This doctrine recognizes situations in which the time-consuming resort to a neutral magistrate for an arrest or search warrant is unnecessary. United States v. Kreimes, 649 F.2d 1185, 1192 (1981). Examples of such circumstances are the escape of the defendant, avoidance of a possible violent confrontation that could cause injury to others, and the destruction of evidence. State v. Hathaway, supra; see also, State v. Diaz-Rubio, supra, 615 at 1127.
The mobility of a vehicle and hot pursuit have also been held to be exigent circumstances. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300. The exigent circumstances doctrine applies equally to warrantless seizures of persons and property because the same privacy interests are implicated. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980); Kreimes, supra.
In United States v. Santana, supra, the United States Supreme Court held that the "hot pursuit" exception justified the entry of officers into the defendant's residence where the officers had probable cause to believe that the defendant was involved in the distribution of heroin and defendant retreated into her home after officers identified themselves. According to the Court, "a suspect may not defeat an arrest which has been set in motion in a public place ... by the expedient of escaping to a private place." 427 U.S. at 43, 96 S.Ct. at 2410.
In the present case, two officers of the Street Crimes Unit were investigating longstanding complaints of drug activity in front of 309 North Elm. The officers set up a surveillance and witnessed defendant engage in what appeared to be two hand-to-hand drug transactions. The officers then approached. During this approach, defendant was warned that a police car was traveling down North Elm. At this point, defendant began to flee. During his flight, defendant discarded a bag containing what appeared to be crack cocaine. The officers then pursued the defendant into the apartment.
Based on the case law discussed above, we conclude that the officers had probable cause to arrest defendant before he entered the apartment and defendant could not thwart the lawful arrest by fleeing into the apartment. Accordingly, the trial *214 court did not err in denying the motion to suppress.

ERROR PATENT DISCUSSION
Louisiana C.Cr.P. art. 873 mandates a 24-hour delay between the denial of a new trial motion and the imposition of sentence unless the defendant expressly waives a delay provided for in this article or pleads guilty, in which case sentence may be imposed immediately.
In the present case, defendant's written motion for new trial was heard and denied on May 26, 1998. When defendant was brought before the trial court for sentencing, he again moved for new trial. After hearing argument, the trial court denied the motion. The trial court then sentenced defendant without any delay.
There is no written motion in the record relating to this second motion for new trial. La.C.Cr.P. art. 852 requires that a motion for new trial be in writing. Where a motion is untimely and does not comply with La.C.Cr.P. art. 854 the trial court does not err in sentencing defendant immediately. State v. Harris, 96-560 (La. App. 5 Cir. 12/30/96), 687 So.2d 1052, 1055. Based on Harris, we find that the trial court in this case was not required to wait because the motion for new trial was not in writing.
In addition, the failure to observe the delay may be considered waived when defense counsel announces in open court that defendant is ready for sentencing because such an announcement waives the delay mandated by La.C.Cr.P. art. 873. State v. Biglane, 99-111 (La.App. 5 Cir. 5/19/99), 738 So.2d 630, 639; State v. George, 570 So.2d 46 (La.App. 5 Cir.1990). In the present case, after the denial of the new trial motion the trial court asked defense counsel, "And is he ready for sentencing?" Defense counsel replied, "Yes, sir." We conclude that defendant waived the delay found in La.C.Cr.P. art. 873.
Finally, the trial court's failure to observe the mandatory 24-hour delay required by La.C.Cr.P. art. 873 is harmless error where the trial court subsequently sets aside the original sentence at a multiple offender proceeding. State v. Brown, 95-124 (La.App. 5 Cir. 5/30/95), 656 So.2d 1070, 1077.
For the foregoing reasons, the conviction is affirmed.
AFFIRMED.
NOTES
[1] This case was originally before this Court under appeal number 99-KA-1214, lodged November 5, 1999. However, while the appeal was pending, defendant filed a motion for new trial in the trial court. We remanded the case to the district court pending a ruling on the motion for new trial, with instructions that the record was to be re-lodged in this Court after the ruling. Following the district court's denial of the motion, the record was re-lodged on March 8, 2000 under number 00-KA-278.
[2] The record does not indicate that the case was formally severed, but the State apparently chose to try the defendants separately. La. C.Cr.P. art. 704 provides that jointly indicted defendants shall be tried jointly unless the State elects to try them separately; or the court, "on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance."